GEORGE B. WILLIAMS, Plaintiff-Appellee, *v.* BOARD OF EDUCATION OF CLINTON COMMUNITY UNIT SCHOOL DISTRICT NO. 15 OF De WITT COUNTY, Defendant-Appellant.

Fourth District   No. 13852

Opinion filed September 12, 1977.

GREEN, J., concurring.

Smith, Smith & Taylor, of Clinton (Joseph B. Taylor, of counsel), for appellant.

Drach, Terrell & Deffenbaugh, P. C., of Springfield, for appellee.

Mr. PRESIDING JUSTICE CRAVEN delivered the opinion of the court:

This case involves a suit for damages by plaintiff George Williams, a former Clinton High School coach, against the defendant Board of Education of Clinton Community Unit School District No. 15 (Board), for the loss of plaintiff's personal coaching library which had been contained in plaintiff's file cabinet and removed and thrown away by

defendant's agents. Plaintiff had been a football coach at Clinton High School for 10 years. Prior to that he had coached for seven years at other high schools. His career as a player had spanned 12 years from little league through college. While playing and studying football, he compiled a reference file supplemented by extensive notes for future use in his coaching career. After he commenced coaching, he attended at least 60 coaching clinics and acquired other reference material and made similar notes of the presentations at the clinics as well as making notes of plays in football games he saw on television. All this material made up plaintiff's coaching reference library and was kept in a file cabinet in the coach's room.

The plaintiff was relieved of his coaching duties by the Board on December 18, 1973. On Friday, January 15, 1974, while having coffee with Al Austin, the athletic director, he was requested by Mr. Austin to remove part of his coaching reference materials from the file cabinet. On that same day plaintiff took two boxes to the area and determined that they would not hold all of the material. On Monday, January 28, 1974, he took additional empty boxes to the area to remove the materials and found the drawers of the file cabinet empty. Subsequently, on February 8, 1974, plaintiff, accompanied by Mr. Austin, discovered a small quantity of the material that had been missing previously. It consisted mainly of noncoaching material. Later that same day, Mr. Reineck, Mr. Austin and plaintiff were in the coach's office and discovered 85 empty manila folders. These folders had contained the plaintiff's reference material and notes and were labeled as to their contents. Using the labels, plaintiff was able to compile a list of the materials for which notes had been made and filed in the folders.

This list was attached to the amended complaint as Exhibit A and was marked for identification at trial, but was not admitted.

At trial, evidence was adduced that student manager, Norman Hoback, during January 1974, had removed the plaintiff's coaching materials from the file cabinet on two separate occasions. The first time was at the direction of Mr. Austin who told him to take the material from one drawer. Austin, in rebuttal, stated he had already checked with Williams about clearing out the entire file cabinet because he needed a file drawer for some of his own material. He asked Hoback to clear a drawer out and put the material in a box and put the box under the desk. The second time plaintiff's material was removed from the cabinet was the next evening or the evening after that. This time the removal was approved by Mr. Reineck. On cross-examination, Hoback stated: "Question: He [Reineck] told you to get rid of them? Answer: Yea, to get rid of, I don't remember saying throw out or anything to indicate destruction, I mean to get rid of."

On both occasions the coaching materials had been placed on the floor

of the office in which the file cabinet was located. The school janitor, Ralph Pear, stated that on January 28, 1974, he had removed the material he had found on the floor and placed it in the trash and again on January 29, 1974, he removed material found on the floor. The material found the second night was put in the janitor's room and two nights later discarded. The janitor was told to remove the material by Hoback and he assumed that the student manager had authority to tell him to remove it.

The school superintendent, Dr. George Edwards, testified that the security of the school was adequate for the protection of the files the teachers maintained there. He stated that teachers could rely upon the security and assume that their property would be safe.

Dr. Harold Allen, a school board member during the 1973-74 school year, testified that a teacher or coach had a right to rely on the security furnished him by the school for the protection of his materials in the school and that the administrators of the school would be derelict if they did not develop policies to further this end.

The plaintiff testified that the value of the material destroyed was $50,000. He arrived at this figure by discussion with other coaches and stated that he could not use other coaches' notes to replace the material. He said it was customary for coaches to take their coaching material with them when they changed teaching positions. These materials, he said, were essential for coaching and represented many hours of long hard work. On cross-examination, plaintiff maintained that it would be impossible to do a good job of coaching without his materials.

Seven other experienced football coaches testified as expert witnesses in plaintiff's behalf. Testimony of two of them was stricken while that of the other five was admitted over defendant's objections that their testimony was speculative since none of them knew exactly what was in the plaintiff's files. Each of these coaches testified that, like plaintiff, they had developed extensive reference files based on notes from prior games, coaching clinics and tips from other coaches. The witnesses described such files in such terms as "essential," "very important," "useful," and one coach even stated that "he could not coach without it." Each of these witnesses was asked the following hypothetical question:

> "I ask you to assume the following facts. Assume the football coach has a reference file of football materials consisting of notes and records he had made and accumulated as a result of 13 years of playing football and 17 years of coaching. During this coaching career he had attended approximately 60 football clinics, corresponded and held discussions with other coaches, including nationally famous coaches, attended high school and college football games and observed football games on TV and made notes of all pertinent and relevant materials and included these in

his files. Assuming further that these files occupied 2½ file drawers, approximately three feet long. Now, based on these facts, do you have, in your experience, do you have an opinion as to the value of such a file?"

Their opinions as to value were as follows: (1) $40,000 to $50,000; (2) $40,000 to $60,000; (3) $75,000 to $100,000; (4) $40,000 to $45,000; and (5) $50,000.

Defendant presented no witnesses as to value, did not challenge the expertise of plaintiff's witnesses and made no effort to challenge their credibility on the value question.

On November 7, 1975, the jury returned a verdict for the plaintiff for $32,500 and defendant appeals.

First, defendant argues that plaintiff failed to meet his burden of proving damages. Defendant contends that the evidence of property loss and the resulting values thereof was too speculative and uncertain to withstand review.

■■ Plaintiff has the burden of proving damages to a reasonable degree of certainty. (*Stein v. Green* (1955), 6 Ill. 2d 234, 128 N.E.2d 743.) Ordinarily the measure of damages for personal property converted is the fair market value at the time and place of conversion. However, the lecture notes, professional papers and work product of a football coach are not typically sold in the marketplace. The parties agree that if the property has no fair market value, then value is to be determined in some rational way and from such elements as are obtainable. (*Flynn v. Zimmerman* (1960), 23 Ill. App. 2d 467, 163 N.E.2d 568.) However, the parties do not agree that all of what was lost is not replaceable. If, in fact, parts of plaintiff's coaching library can be replaced, then the damages for the loss of those items would have to be measured by replacement cost.

Defendant objected to the hypothetical as formulated on grounds that it was not based upon facts in evidence. We agree.

■■ There was an insufficient foundation to allow the experts to render their opinions as to value. There was very little testimony concerning what exactly was in the file drawers and later thrown away. Apparently, along with plaintiff's coaching notes, the files contained, among other things, catalogs, books, invoices, schedules and various inventories of equipment checked out to students. How much space was actually taken up by these materials is unclear. Yet, it is clear that much of this material was either worthless or replaceable. It was not, in any case, as valuable as the coach's work product; it was not "essential" to his coaching. The hypothetical, besides lacking sufficient foundation to apprise the experts of what they were valuing, was misleading since it informed them that the coaching notes occupied 2½ file drawers. This assumption was erroneous since *everything* that was thrown out occupied that amount of space and

part of what was discarded was clearly noncoaching material. This defect in the hypothetical could have misled the experts and inflated their valuations if they visualized that the files entirely consisted of coaching material.

Besides the five expert opinions as to value, which should not have been admitted, all that remains is plaintiff's own opinion of value, $50,000. In this regard the present case is analogous to *Long v. Arthur Rubloff & Co.* (1975), 27 Ill. App. 3d 1013, 327 N.E.2d 346. In *Long,* defendant wrongfully took lists and files from plaintiff's office which contained leasing information which plaintiff had accumulated over the years to aid him with his business as a real estate broker. Plaintiff's files were one foot thick and contained pertinent leasing data categorically organized by the type of building occupied. Plaintiff's theory of damages, unlike here, was lost profits. The property taken had no ascertainable market value and was not feasibly replaceable. The only testimony as to value was plaintiff's own opinion, $25,000.

The appellate court in *Long* held that there was insufficient testimony from which the trier of fact could determine the value of the leasing data to the plaintiff. Unsupported by sufficient foundation, plaintiff's opinion was held incapable of establishing damages. *Long* relied primarily on *Lee Shell Co. v. Model Food Center, Inc.* (1969), 111 Ill. App. 2d 235, 250 N.E.2d 666, in which plaintiff's designs for a shopping center were converted. The designs had no market value and the only evidence bearing on value was the opinion of one of plaintiff's corporation officers. The appellate court held that the evidence, absent an adequate foundation, was insufficient to establish damages.

■■ As in *Lee Shell,* here there was insufficient evidence to establish the relationship between the cost of production (time and effort expended) and the value of the *property* at the time of conversion. Plaintiff here testified that he attended and took notes at 60 coaching clinics. No doubt he watched thousands of football games during his career as a player and coach. He testified in vague fashion that he took notes of everything pertinent which occurred in those games. All this establishes is that he spent many hours watching games and clinics at which he took some sort of notes. Nowhere was it established how the materials collected came to be worth $50,000 to the plaintiff. For this reason, plaintiff's opinion on value was, like in *Long* and *Lee Shell,* without sufficient foundation to support the damages awarded by the jury's verdict.

■■ Defendant next argues that plaintiff failed to mitigate damages. Although plaintiff would have such a duty, defendant has the burden of proving want of mitigation. (*New York, Chicago & St. Louis R.R. Co. v. American Transit Lines, Inc.* (1951), 408 Ill. 336, 97 N.E.2d 264; *Compton*

*v. School Directors of District No. 14* (1955), 8 Ill. App. 2d 243, 131 N.E.2d 544.) Defendant simply did not carry this burden. The weight of evidence was that notes compiled by one coach would be of only limited utility to another. Much of the materials obtained through clinics was unavailable. Defendant did not establish that replacement materials were available, and if so, at what cost. With this evidence we simply are not convinced that mitigation was possible.

Defendant also contends that a mistrial should have been granted because a newspaper article concerning the case had been read by two jurors. On the second day of the trial, the Bloomington Pantagraph printed a story recapping the first day of the trial. This article was printed despite the fact that the court had ordered the press to refrain from printing any facts about the trial until after the verdict.

■■ It is generally agreed that the decision to grant a mistrial hinges on whether any jurors have been influenced or prejudiced to the extent that they would no longer be fair and impartial. (*People v. Hryciuk* (1954), 5 Ill. 2d 176, 125 N.E.2d 61.) This determination is within the sound discretion of the trial court. Looking at the article itself, we find that most of what it contained was properly before the jury, the rest is innocuous. It cannot have been error for the court to refuse to grant a mistrial because defendant has not demonstrated actual prejudice. *People v. Georgev* (1967), 38 Ill. 2d 165, 230 N.E.2d 851, *cert. denied* (1968), 390 U.S. 998, 20 L. Ed. 2d 97, 88 S. Ct. 1202.

■■ The next issue is whether, as a matter of law, there was insufficient evidence to show negligence on defendant's part while establishing contributory negligence on plaintiff's part. The testimony of Edwards and Allen that the teachers had a right to rely on the school security to protect their private papers, tends to show defendant's negligence and plaintiff's freedom from contributory negligence. Norman Hoback, student manager, testified that assistant principle Reineck told him to remove plaintiff's materials from the file cabinet and to "get rid of them." This testimony, we believe, supports a finding of negligence against defendant and contradicts defendant's argument in his brief that "none of the administrative staff ordered the papers destroyed or thrown away." Mr. Pear, the janitor, testified that he threw the boxes containing plaintiff's papers away at the direction of Norman Hoback. If one tells another to "get rid of" something, it seems foreseeable that the items may be disposed of in such a way as to never be recovered. In the alternative, the jury could have found the janitor negligent for throwing out plaintiff's paper on the direction of the student. The janitor testified that he merely presumed Hoback to have the authority to give such an order. Pear could have been found negligent for failing to check this out prior to disposing of the materials.

■■ The evidence does not show contributory negligence as a matter of law. Even though the coach's offices were overcrowded, the files were unlocked and many people had access thereto, plaintiff was not necessarily contributorily negligent. The jury could infer from the testimony of Edwards and Allen that plaintiff's conduct was not a proximate cause of his loss.

■■ Next, defendant contends that the trial court erred in denying its motion for asserting immunity. Since the 1965 Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1965, ch. 85, par. 1—101 *et seq.*), governmental immunities have become the exception rather than the rule. Unless the defendant can demonstrate an applicable immunity under the statute, there is no immunity. In addition, the statute must be strictly construed against the local public entity because the statute creates immunities after they were abolished in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89, *cert. denied*, 362 U.S. 968, 4 L. Ed. 2d 900, 80 S. Ct. 955. See *Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 270 N.E.2d 415.

■■ ■ Section 2—201 (Ill. Rev. Stat. 1975, ch. 85, par. 2—201) provides immunity for public employees serving in policy-making positions while in the exercise of discretion. However, whether the jury found negligence in the actions of the janitor or the assistant principal, or both, section 2—201 immunity does not apply. The doctrine of quasi-judicial immunity as contained in section 2—201 rests on the principle that the public decision maker should be shielded from personal liability when making decisions assessing the public's needs and that such decisions should be made without fear of personal liability or the second-guessing of courts and juries. (*Fustin v. Board of Education* (1968), 101 Ill. App. 2d 113, 242 N.E.2d 308.) We find no basis for immunity here.

Finally, defendant also contends that it was error not to grant a mistrial due to the alleged violation of the court's order excluding witnesses. The alleged error relates to testimony regarding damages. We conclude that a new trial is necessary for the reasons already stated. Thus, we need not discuss the details of this issue. The judgment is affirmed upon the issue of liability. We vacate the judgment and remand for a new trial upon the issue of damages only.

Affirmed in part, reversed in part and remanded with directions.

REARDON, J., concurs.

Mr. JUSTICE GREEN, concurring:
I concur in affirming the determination that defendant is liable and in vacating the award of damages and remanding for a new trial on that

issue. I agree that reversible error occurred by permitting the expert witnesses to testify to an opinion of value without sufficient foundation evidence having been produced or recited in the hypothetical question asked them.

Determination of the proper measure of damages for the loss of the type of property involved here is exceedingly difficult. I appreciate the impropriety and dangers involved in our giving an advisory opinion. Because of the peculiar circumstances of this case, however, I feel that we are remanding without giving guidance for the retrial.

The property had no market value. The majority properly adopt the statement from *Flynn v. Zimmerman* that, accordingly the value must be determined in a rational way from such elements as are obtainable. The opinion in that case also stated that lack of market value does not restrict the plaintiff to nominal damages. To the extent that the property here consisted of notes, it also had no ascertainable replacement cost. Although use of the notes would appear to enhance the plaintiff's coaching ability and, therefore, his earning·capacity, no dollar amount could be placed upon that. Neither time nor money figures can be shown to properly reflect the cost of the notes because they were acquired as a result of observing, conversing, and attending clinics while also gaining many other benefits. Unless some other method of proving damages is available, plaintiff will be limited to nominal damages.

Here, the evidence indicated that the notes were primarily of value to the person who had made the notes. Under the circumstances of this case, I deem the measure of damages to be the value to plaintiff and the only rational way to determine that value is, as plaintiff attempted here, to prove that value by the opinions of other persons in the field. The opinion, however, must be given upon a more specific description of the notes. Only by permitting testimony of this conjectural nature can a plaintiff in the instant situation obtain other than nominal damages.

If the court does permit introduction of this type of evidence as the only type available to prevent a wrong, a correlative burden is placed upon the court to set aside awards which are excessive.