Raymond J. DONOVAN, Secretary of Labor, United States Department of Labor,* Plaintiff-Appellee,

v.

FEDERAL CLEARING DIE CASTING COMPANY, a corporation, Mal Coghlan and Michael Coghlan, Defendants-Appellants.

Nos. 80–1241, 80–1613.

United States Court of Appeals, Seventh Circuit.

Submitted Jan. 21, 1981.

Decided July 29, 1981.

Rehearing and Rehearing En Banc Denied Dec. 3, 1981.

---

\* Honorable Earl R. Larson, Senior District Judge for the District of Minnesota, is sitting by designation.

\* The Government originally brought these cases under the name of Ray Marshall, former Secretary of Labor.

Robert D. Moran, Washington, D. C., for defendants-appellants.

Thomas L. Holzman, U. S. Dept. of Labor, Washington, D. C., for plaintiff-appellee.

Before BAUER, Circuit Judge, KUNZIG,** Judge, and WOOD, Circuit Judge.

KUNZIG, Judge.

In these consolidated cases, the question before us is whether the district court, 484 F.Supp. 215, properly denied Federal Clearing Die Casting Company's (Federal)[1] motion to quash an OSHA[2] inspection warrant, simultaneously holding that company in civil contempt for refusing to comply with the warrant (No. 80–1241), and its subsequent granting of certain relief to the Secretary of Labor (Secretary), and denial of Federal's motion for a new trial (No. 80–1613). Because we find that the OSHA inspection warrant was issued without probable cause, the orders of the district court under review are reversed, and the warrant is dissolved.

---

** The Honorable Robert L. Kunzig, Judge of the United States Court of Claims, is sitting by designation.

**1.** Mal Coghlan and Michael Coghlan, officers of Federal Clearing Die Casting Company, are joined as Defendants-Appellants in this action.

**2.** Occupational Safety and Health Administration.

## I.

On January 10, 1980, United States Magistrate John W. Cooley,[3] upon an *ex parte* application made on the same date by John Stoessel, an OSHA compliance officer, issued a "Warrant for Inspection" pursuant to the Occupational Safety and Health Act of 1970 (Act), 29 U.S.C. §§ 651, *et seq.* (1976), for an inspection of Federal's workplace.

Stoessel had applied for the inspection warrant based on two newspaper articles which appeared in the January 9 and 10, 1980, issues of the Chicago *Sun-Times.* These articles described an industrial accident in which one of Federal's employees, Natalio Alamillo, allegedly had his hands severed while operating a hydraulic punch press on January 7, 1980. In support of the warrant application, Stoessel attached copies of the two articles. Also attached to the warrant application was a seven-page OSHA citation and notification of proposed penalty which had been issued to Federal following inspection of its workplace on September 5, 1975, more than four years earlier. The record is devoid of any evidence to show that OSHA attempted to tie together specifically the old citation and the new accident. As a matter of fact, the application did not even establish the occurrence of an accident; it was based merely upon the existence of the newspaper reports and the 1975 OSHA citation.

On January 11, 1980, Stoessel, accompanied by another OSHA compliance officer, appeared at Federal's plant to serve the inspection warrant, and to conduct an inspection of the premises to insure compliance with the Act. With the advice of counsel, the company refused entry on the ground that the warrant had been improperly issued. OSHA then petitioned the district court for an adjudication of civil contempt and Federal filed a motion to quash the warrant in the same court. An order of civil contempt was issued on February 20, 1980 by Judge Bua[4] and a hearing for April 3, 1980[5] was scheduled to determine whether sanctions should be imposed on the company for its allegedly contumacious conduct.

During the intervening six-week period, OSHA compliance officers again attempted to inspect Federal's premises and to talk privately with its employees. Because of certain problems encountered by these officers, OSHA filed an application for sanctions and other relief in the district court on March 31, 1980. Since Federal's counsel could not appear at the April 3, 1980 hearing due to a prior trial obligation, Mal Coghlan, a company officer, appeared *pro se* for the sole purpose of requesting a continuance.

However, at the hearing, Judge Bua agreed only to grant the request for a continuance on the condition that Federal would assure the court that the February 20, 1980 order would be complied with "in every respect." Consequently, an agreement was entered into by Federal and the Secretary in which the company agreed to cooperate in the inspection of its premises. An order issued that day, April 3, 1980, reflected the essence of that agreement.

On April 11, 1980, Federal moved for a new trial on the grounds that (1) it was denied the right to counsel at the April 3, 1980 hearing and (2) it lacked sufficient time to defend against the March 31, 1980 application for sanctions. On April 14, 1980, Judge Bua denied Federal's motion for a new trial.

■ Federal argues that no probable cause existed for the issuance of the OSHA inspection warrant since the Secretary failed to present to the issuing magistrate "specific evidence" of an existing violation. Specifically, Federal contends that the Sec-

---

3. United States District Court for the Northern District of Illinois, Eastern Division.

4. Although Judge Bua's adjudication of civil contempt, dated February 20, 1980, made no mention of Federal's Motion to Quash Warrant, we assume that it was denied *sub silentio.*

5. Originally, this hearing was scheduled for March 14, 1980, but was subsequently rescheduled to April 3, 1980.

retary's reliance on the two newspaper articles and the 1975 OSHA citation does not satisfy the probable cause standard announced by the Supreme Court in *Marshall v. Barlow's*, 436 U.S. 307, 98 S.Ct. 1816, 56 L.Ed.2d 305 (1978). We agree with Federal.

## II.

■ Section 8(a) of the Act, 29 U.S.C. § 657(a),[6] authorizes the Secretary (or his agents) to inspect the premises of any employment facility within the Act's jurisdiction. The purpose of such inspections is to search for dangerous work conditions and violations of OSHA regulations. Although no search warrant or other process is explicitly required under the Act, the Court's decision in *Barlow's* makes clear that a warrant, or its equivalent, is . constitutionally necessary to conduct OSHA administrative inspections. *Donovan v. Dewey*, —— U.S. ——, 101 S.Ct. 2534, 69 L.Ed.2d 262 (1981). *See also Camara v. Municipal Court*, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); *See v. City of Seattle*, 387 U.S. 541, 87 S.Ct. 1737, 18 L.Ed.2d 943 (1967). An OSHA inspection warrant is to issue only upon a showing of some degree of probable cause. As we have recently indicated, "precisely what degree of probable cause is required in particular cases has been the topic of much post-*Barlow's* litigation." *Burkart Randall Div. of Textron, Inc. v. Marshall*, 625 F.2d 1313, 1316 (7th Cir. 1980). It is clear, however, that "[p]robable cause in the criminal sense is not required" for the issuance of an OSHA inspection warrant. 436 U.S. at 320, 98 S.Ct. at 1824. Rather, only a flexible, less stringent standard of probable cause need be satisfied.[7]

■ In *Barlow's*, the Supreme Court enunciated two alternative methods by which the less stringent standard of probable cause could be established: (1) if *specific evidence* of an existing violation was presented, or (2) if a showing was made that reasonable legislative or administrative standards for conducting such an inspection were satisfied.[8] 436 U.S. at 320–321, 98 S.Ct. at 1824–1825. Given this standard, the specific question before us is whether an application by OSHA for a warrant to conduct an inspection of a workplace pursuant to a newspaper report and prior OSHA citation meets the probable cause requirements for administrative inspections set forth in *Barlow's*. In answering this question, we need only examine the warrant application presented to the magistrate to determine whether probable cause to conduct the inspection existed. *Stoddard Lumber Co., Inc. v. Marshall*, 627 F.2d 984 (9th Cir. 1980); *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373 (7th Cir. 1979); *In the Matter of Establishment Inspection of: Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979); *Pelton Casteel, Inc. v. Marshall*, 588 F.2d 1182 (7th Cir. 1978).

## III.

In the application for the inspection warrant, the magistrate was provided with the following information:

\* \* \* \* \* \*

---

6. *Section 8(a) of the Act provides:*

"In order to carry out the purposes of this chapter, the Secretary, upon presenting appropriate credentials to the owner, operator, or agent in charge, is authorized—

(1) to enter without delay and at reasonable times any factory, plant, establishment, construction site, or other area, workplace or environment where work is performed by an employee of an employer; and

(2) to inspect and investigate during regular working hours and at other reasonable times, and within reasonable limits and in a reasonable manner, any such place of employment and all pertinent conditions, structures, machines, apparatus, devices, equipment, and materials therein, and to question privately any such employer, owner, opera-

tor, agent, or employee." Pub.L. No. 91–596, § 8(a), 84 Stat. 1598.

7. For a more general discussion, *see* Rothstein, *OSHA Inspections After Marshall v. Barlow's, Inc.*, 1979 Duke L.J. 63.

8. The Secretary does not attempt to argue that probable cause for the issuance of the warrant was based on *Barlow's* alternative showing, *i. e.*, that reasonable legislative or administrative standards for conducting an inspection are satisfied with respect to a particular establishment. 436 U.S. at 320, 98 S.Ct. at 1824. Rather, the critical emphasis in this case is whether sufficient "specific evidence" was present to support a showing of probable cause.

2. The desired inspection is part of an accident investigation occurring at the workplace cited above, as prescribed by Chapter IV, entitled Compliance Programming, of the Occupational Safety and Health Administration Field Operations Manual. The accident involved an employee's hands becoming trapped in a press on January 7, 1980, and resulted in the amputation of both hands. Copies of news articles excerpted from the January 9 and 10, 1980, editions of the Chicago Sun-Times is attached hereto, made a part hereof, and marked Exhibit A and Exhibit B. The conditions giving rise to the accident indicates the existence of dangerous conditions that may be in violation of the Act and/or the regulations issued pursuant thereto. The inspection prompted by this accident is part of an inspection and investigation program to assure compliance with the Act and is authorized by section 8(a) of the Act.

3. Federal Clearing Die Casting was previously inspected by OSHA on September 8, 1975. A citation issued to the employer on November 7, 1975 included violations related to the safe operation of presses. A copy of this citation is attached hereto, made a part hereof, and marked Exhibit C. On April 30, 1976 Charles F. Kerbs, President, informed the OSHA Area Office by letter that all items of this citation had been abated.

Paragraph two clearly shows that OSHA sought the warrant for the purpose of conducting "an accident investigation" involving "an employee's hands being trapped in a press on January 7, 1980." The application, however, made no effort whatsoever to substantiate the even bare minimum that an accident had in fact occurred.

We need not belabor the point that all newspaper reports are not of sufficient reliability to form the basis of Fourth Amendment probable cause determination.[9] Indeed, the Supreme Court has recognized that the publication of "factual error" frequently occurs in newspapers. *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ We do not question Stoessel's good faith belief that an accident had indeed occurred. Nonetheless, it is well settled that the occurrence of an accident, in and of itself, is not proof of an OSHA violation. *National Realty and Construction Co., Inc. v. OSHRC*, 489 F.2d 1257 (D.C.Cir.1973). OSHA failed to make any attempt to question the victim or members of his family—perhaps even a conversation with one of the victim's physicians might have made the outcome in this case different. Similarly, a complaint filed by a co-worker of the victim might have been sufficient to satisfy the "specific evidence" requirement and cure the fatal flaw in the application.[10] A magistrate must be presented with facts upon which he can exercise the independent judgment required of him. Mere journalistic prose is not the kind of underlying factual data upon which a magistrate can exercise such judgment.

Furthermore, the application is nothing more than unrelieved boilerplate, stating merely that the occurrence of the accident "indicated the existence of dangerous conditions that may be in violation of the Act and or regulations issued pursuant thereto."[11] We recently rejected this kind of boilerplate language in a similar context,

---

**9.** A relevant example of such journalistic unreliability was seen in the highly publicized Pulitzer Prize winning article, "Jimmy's World," which recently appeared in the Washington Post on September 28, 1980. It was subsequently discovered that the author, Janet Cooke, *fictionalized* the *entire story*.

**10.** For example, if the warrant application presented to the magistrate had contained evidence of employee complaints, the district court may very well have been justified in its finding of "specific evidence" to support a

showing of probable cause. *See generally Marshall v. W & W Steel Co., Inc.*, 604 F.2d 1322 (10th Cir. 1979); *Weyerhaeuser Co. v. Marshall*, 592 F.2d 373 (7th Cir. 1979); *In the Matter of Establishment Inspection of: Gilbert & Bennett Mfg. Co.*, 589 F.2d 1335 (7th Cir.), *cert. denied*, 444 U.S. 884, 100 S.Ct. 174, 62 L.Ed.2d 113 (1979); *Plum Creek Lumber Co. v. Hutton*, 608 F.2d 1283 (9th Cir. 1979).

**11.** *See* quoted text, *supra*, at 797.

*Weyerhaeuser Co. v. Marshall, supra.* As we there stated:

> We must assume that the warrant required by *Barlow's* in cases where the company does not voluntarily submit to an inspection has some significance.... We decline to strip the magistrate of his probable cause function, as the very purpose of the warrant is to have the probable cause determination made by a detached judicial officer rather than by a perhaps over-zealous law enforcement agency.

592 F.2d at 378 [citations omitted]. The court went on to note that had only "a few more additional facts" been added to the *Weyerhaeuser* boilerplate, the "specific evidence" manner of establishing probable cause would have been satisfied. *Id.* In view of the ease with which Stoessel could have obtained such additional information, we see no reason to uphold the application submitted in this case.

■ Paragraph 3 of the application contains information relating to OSHA's prior citation of Federal. The Secretary contends that this information is sufficient to supply the "specific evidence" to support a finding of probable cause. We disagree. To hold that the existence of an earlier OSHA citation is a sufficient reason upon which to base a finding of probable cause would in effect grant OSHA a perpetual right of reinspection once an initial violation was found. *Accord, Marshall v. Weyerhaeuser Co.*, 456 F.Supp. 474, 483 (D.N.J. 1978).

Moreover, it is important to note both parties concede that the hydraulic punch press involved in the 1980 accident was *not* one of the machines cited in 1975 to be in violation of OSHA regulations. As a matter of fact, the press involved in this case had been inspected and found to be free of any defects. Nonetheless, the district court ruled that the earlier citation served to buttress the magistrate's finding that probable cause existed for the 1980 violation. This holding appears to violate OSHA's own presumption which states as follows:

Hazardous conditions which may be violative of the Act will ordinarily be corrected by the employer, once brought to his attention.

29 C.F.R. § 1977.12(b)(1). We hold therefore that the 1975 OSHA citation issued more than four years earlier, does not constitute "specific evidence" that there is a probability of an existing violation.

All other arguments and issues raised by the parties, although not directly addressed by this opinion, have been carefully considered. Because of our ultimate disposition of this cause, we find it unnecessary to reach these matters. Accordingly, the warrant is dissolved,—the orders appealed from having been in all respects

Reversed.