THE CITY OF CHICAGO, Plaintiff-Appellee, *v.* THADDEUS PUDLO *et al.*, Defendants-Appellants.

First District (1st Division)   No. 82—2256

Opinion filed December 30, 1983.—Supplemental opinion filed on denial of rehearing May 7, 1984.

338

Dennis M. Doherty, of Chicago, for appellants.

James D. Montgomery, Corporation Counsel, of Chicago (Jerome A. Siegan, Frank W. Nagorka, and Allison K. Bethel, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendants Thaddeus Pudlo and Walter J. Pudlo were found guilty of violating chapter 130, sections 6.1, 6.4 and 9 of the Municipal Code of Chicago (Chicago, Ill., Municipal Code 1980, ch. 130, secs. 6.1, 6.4, 9) which regulates wholesale and retail food establishments in the city. The issues on appeal include: (1) whether chapter 130—9 of the Municipal Code which authorizes warrantless searches of food establishments is unconstitutional; (2) whether the issuance of an administrative search warrant was proper; (3) whether lack of counsel at trial constituted reversible error; (4) whether trial errors deprived defendants of due process of law; (5) whether the trial court acted properly with respect to possible jury contamination; and (6) whether defendants are entitled to return of their seized weapons.

Three separate complaints were filed in this case. On July 1, 1981, Thaddeus Pudlo was charged with two violations of the Municipal Code. Count I alleged a violation of chapter 130—9 for refusing to allow an inspection of his food establishment. Count II alleged a violation of chapter 16—5 for obstructing an inspector in the performance of his duties. On July 15, 1981, a complaint was filed against both defendants charging them with three violations of the Municipal Code. Count I alleged a violation of chapter 130—6.1 for failure to hold a license for the business; count II alleged a violation of chapter 130—6.1 and prayed for judgment finding a daily violation for not holding a license; count III alleged a violation of chapter 130—6.3 for failure to pay a truck license fee. The third complaint was filed on July 15, 1981, against both defendants charging them with three additional violations of the Municipal Code. Count I alleged a violation of chapter 130—6.16 for hav-

ing a dog on the premises; count II alleged a violation of chapter 130—6.4 for unsanitary conditions on the premises; and count III alleged a violation for chapter 130—6.18 for rubbish on the premises.

On July 15, 1981, an inspection of defendant's business, Pudlo Food Products, was conducted by the Department of Consumer Services for the city of Chicago (Department). The inspection was made pursuant to the issuance of a warrant and with the accompaniment of Chicago police officers. The record is unclear as to events transpiring before this date except that unsuccessful attempts were made to gain access to the defendants' premises for purposes of making an inspection.

John R. Colletti, supervising food inspector for the Department, testified that he, along with Inspector John Sharkey and Chicago police officers, conducted the July 15, 1981, inspection of defendants' food establishment. Colletti enumerated his findings at trial and summarized those findings as follows: "And the place was not kept neat and clean." Inspector Sharkey and Officers Eugene Seyfert and Judith Schultz corroborated Colletti's testimony regarding the condition of defendants' premises.

Defendants first argue that their convictions should be reversed because chapter 130—9 of the Municipal Code violates the fourth amendment of the United States Constitution because that chapter authorized warrantless searches of any establishment within the city of Chicago. The provision of chapter 130—9 pertinent to this case provides:

> "A representative of the Department of Health, after proper identification, shall be permitted to enter, at any reasonable time, any establishment within the City of Chicago for the purpose of making an inspection to determine compliance with this ordinance. He shall be permitted to examine the records of the establishment to obtain pertinent information relating to food, water, beverages and supplies received or used, and persons employed."

In light of the fact that the inspection in this case was conducted pursuant to a warrant, it will not be necessary to reach the issue as to the constitutionality of warrantless searches under chapter 130—9.

■ Defendants' second argument is that because there was no probable cause to issue the search warrant, the trial court erred in denying defendants' motion to quash the warrant. It is clear that an administrative inspection warrant is to issue only upon a showing of probable cause. (*Donovan v. Federal Clearing Die Casting Co.* (7th Cir. 1981), 655 F.2d 793.) Although the degree of probable cause that is required is unclear (*Burkart Randall Division of Textron, Inc. v. Mar-*

*shall* (7th Cir. 1980), 625 F.2d 1313), it is clear that probable cause in the criminal sense is not required for the issuance of an administrative inspection warrant. (*Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 56 L. Ed. 2d 305, 98 S. Ct. 1816). In the *Barlow's* case, the United States Supreme Court held that "probable cause justifying the issuance of a warrant may be based not only on specific evidence of an existing violation but also on a showing that 'reasonable legislative or administrative standards for conducting an . . . inspection are satisfied with respect to a particular [establishment].' " 436 U.S. 307, 320, 56 L. Ed. 2d 305, 316, 98 S. Ct. 1816, 1824, citing *Camara v. Municipal Court* (1967), 387 U.S. 523, 538, 18 L. Ed. 2d 930, 941, 87 S. Ct. 1727, 1736.

In determining the reasonableness of a particular inspection, and in turn, the existence of probable cause for that inspection, the need for the inspection must be balanced against the invasion which the search entails. (*Camara v. Municipal Court*; see also *Morris v. United States Department of Labor* (S.D. Ill. 1977), 439 F. Supp. 1014.) The *Camara* court added that a valid public interest would justify issuance of a suitably restricted warrant.

The public interest asserted by the government is the protection of the health and safety of consumers through regulations such as approved sources of food supplies and storage procedures to prevent contamination of food products. The scope of the intrusion is limited by the Code to areas where there is food production or storage. The record disclosed that the search was initially made pursuant to a computer listing which named all food establishments in Chicago. At the hearing, Inspector Colletti stated that defendants had been issued a license to operate a food establishment in 1979 and 1980. Colletti noted, however, that the defendant's license had been suspended in 1980 for unsanitary conditions and had never been reinstated. Colletti further testified that defendants were still operating the food establishment. The search warrant was then issued over defendants' objections.

■ The record reveals that the inspection was initially attempted pursuant to an administrative plan to ensure compliance with Code regulations and therefore not arbitrary. Defendants' refusal to permit entry at that time prompted the need to apply for a warrant. It would appear that the court considered the allegations presented at the hearing to have been sufficient for probable cause under the circumstances and we find no error in that ruling.

Defendants next contend that it was reversible error for the trial court to deny them appointed counsel to assist in their defense. Defendants argue that there was no voluntary and knowing waiver of counsel, but that they in fact made it clear throughout the proceedings

that they wanted legal assistance. Defendants further argue that they were not given the opportunity to fill out an affidavit of assets and liabilities in order to secure the services of a public defender.

The city asserts, however, that the sixth amendment does not obligate courts to furnish counsel for indigent defendants in quasi-criminal actions where there is no possibility of imprisonment. (*City of Danville v. Clark* (1976), 63 Ill. 2d 408, 348 N.E.2d 844, *cert. denied* (1976), 429 U.S. 899, 50 L. Ed. 2d 184, 97 S. Ct. 266.) The city further argues that it was through defendants' own actions that the requisite affidavit for establishing indigency was not completed.

The constitutional right to appointed counsel is limited to criminal proceedings which result in actual imprisonment (*Argersinger v. Hamlin* (1972), 407 U.S. 25, 32 L. Ed. 2d 530, 92 S. Ct. 2006; see also *Scott v. Illinois* (1979), 440 U.S. 367, 59 L. Ed. 2d 383, 99 S. Ct. 1158), and the statutory right to counsel is similarly limited. (See Ill. Rev. Stat. 1981, ch. 38, pars. 103—4, 113—3(b); ch. 34, par. 5604.) The issue of an indigent defendant's right to appointed counsel in a prosecution for violation of municipal ordinances has not been ruled upon by the courts of this State. The determination of whether a party is entitled to appointed counsel, however, is a matter within the trial court's discretion which must be delicately decided always with a mind toward protection of the indigent party from any possible impairment. See *People v. Whitney* (1974), 24 Ill. App. 3d 685, 321 N.E.2d 317 (abstract).

In the instant case, the record is replete with instances where the various trial judges who participated in this matter admonished both defendants of their need for counsel. The record indicates that defendants failed and refused to comply with the eligibility requirements for appointment of counsel by not supplying the requisite information regarding their financial situation. The record also shows that the trial court made attempts to ascertain the indigency of defendants, but defendants refused to cooperate in the court's inquiry. The trial court, in a further attempt to determine defendants' financial situation, requested that defendants complete the requisite affidavit for appointment of a public defender. Again, defendants failed to cooperate with the court by choosing not to complete the form. Since defendants failed and refused to supply the basic information required to support their request for court appointed counsel due to their indigency, the court was justified in refusing to appoint a public defender or other counsel to assist defendants in their defense.

Defendants next contend that the cumulative effect of trial errors deprived them of their due process right to a fair trial. The errors enumerated in defendants' brief amount to an allegation that the rules of

evidence were not strictly followed. Defendants argue that the errors would not have occurred had they been represented by counsel. The city counters by asserting that errors of which defendants complain have been waived for failure to include them in their post-trial motion.

Generally, the failure by a defendant to raise an issue in his post-trial motion constitutes a waiver of that issue and cannot be urged as a ground for reversal on review. (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856.) Rule 615(a) (87 Ill. 2d R. 615(a)) provides that a reviewing court may consider issues which amount to plain error affecting substantial rights although the issues were not included in the defendant's post-trial motion.

■ After examining the record before us, we are not persuaded that the alleged errors are plain errors affecting defendants' right to a fair trial, and we see no reason to depart from the general rule that issues not properly preserved for review are waived.

Defendants also contend that the trial court erred in denying their motion for mistrial which they based upon an allegation of jury contamination. Defendants argue that the trial court failed to adequately investigate the defendants' charge that the city's main witness was conversing and laughing with the deputy sheriff in the presence of the jury during a side bar.

The decision whether or not to grant a mistrial rests within the sound discretion of the trial court based upon the particular circumstances of the case. (*Benuska v. Dahl* (1980), 87 Ill. App. 3d 911, 410 N.E.2d 249.) A mistrial should be declared only as the result of some occurrence of such character and magnitude that a party is deprived of its right to a fair trial. (*Benuska v. Dahl; Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.) The moving party must demonstrate actual prejudice as a result of the ruling or occurrence. (*Williams v. Board of Education* (1977), 52 Ill. App. 3d 328, 367 N.E.2d 549.) Finally, the trial court's ruling on a motion for mistrial will not be disturbed on review absent a clear abuse of discretion. *Stuart v. Rahn* (1974), 16 Ill. App. 3d 315, 306 N.E.2d 66.

■ The record reveals that immediately after defendants brought the allegation of jury contamination to the attention of the court, the court called for a side bar with both defendants, the prosecutor, Colletti and the deputy sheriff participating. Defendants account of the occurrence was categorically denied by Colletti and the deputy sheriff. Thereafter, the court denied defendants' motion for mistrial. Later in the trial, Donald Warden, a spectator, testified that he observed Colletti and the deputy sheriff conversing and laughing while a side bar was taking place. The court then conducted a *voir dire* of the jurors

and alternates individually. The court asked each juror and alternate essentially the following question:

> "There's been an allegation that on Tuesday morning when the court and the defendant and the prosecutor and the court reporter were in chambers here discussing a legal matter, the deputy sheriff and the first witness Mr. Colletti were talking and laughing in the presence of the jury. Do you remember such an incident?"

On the basis that 13 of the jurors said they did not remember such an incident, and the one juror who said: "That I'm not sure," the court again denied the defendant's motion. Apparently, the court was satisfied after conducting the *voir dire* that no prejudice to defendants had occurred. We are not persuaded that the court acted improperly in attempting to ascertain whether or not there had been jury contamination.

Defendants' next contention is that they are entitled to the return of two firearms which were seized by police during the city's inspection of defendants' business. The record reveals that the weapons were seized from defendants' upstairs living quarters. At trial, the court granted the motion to suppress the firearms. Thereafter, pursuant to a request from an assistant State's Attorney who was assigned to that courtroom, the court issued an order to confiscate and destroy the weapons. In denying defendant's motion for a new trial, the court stated:

> "As far as the return of your weapons sir, I did suppress those weapons. As far as evidence being presented in your case, there was an order to confiscate and destroy. Your legal remedy would be a civil action in replevin to recover those weapons. I would tell you had you been registered properly with all the authorities, I would have returned those weapons to you."

The record is clear in this case that defendants filed a timely motion for return of their weapons at the conclusion of the trial. The court denied the motion and directed defendants to seek relief in civil court. In *People v. Jackson* (1975), 26 Ill. App. 3d 845, 849, 326 N.E.2d 138, 141, a case in which defendant was similarly directed by the court to seek the return of his revolver in civil court, the court stated:

> "We perceive no justification for the imposition of such a procedural burden *** The unmistakable trend of recent court procedures is to avoid the duplication of legal controversies when a disposition of the subject matter and personal property before the court can be made conveniently."

■ We believe the holding in *Jackson* is applicable to the case at

bar. There was no adequate showing as to why the trial court should not have conducted a hearing on this issue in light of the fact that the weapons were seized during the inspection by the city. We do not favor the splitting of cases in instances, such as this, where all the necessary evidence to decide the matter is before the trial court. Accordingly, we reverse the order of the trial court which denied the defendants' motion seeking return of their weapons and direct the circuit court to conduct a hearing as to the merits of the issue.

Defendants finally ask this court to vacate the conviction of Walter J. Pudlo for violation of chapter 130, section 9 of the Code since he was never charged with that violation. In view of the fact that the city confesses error as to this particular conviction, the conviction is hereby vacated.

For the foregoing reasons, that part of the circuit court's judgment based on the motion for return of defendants' weapons is reversed and remanded with directions. Additionally, the conviction of Walter J. Pudlo is vacated and in all other respects, the judgment of the circuit court is affirmed.

Judgment affirmed in part; vacated in part; reversed and remanded with directions.

BUCKLEY, P.J., and McGLOON, J., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

JUSTICE CAMPBELL delivered the opinion of the court:

Subsequent to the filing of this opinion, defendant Thaddeus Pudlo filed a petition for rehearing urging, *inter alia*, that this court specifically address the issue whether warrantless searches of food establishments under section 130—9 of the Municipal Code of Chicago (Chicago, Ill., Municipal Code (1980), ch. 130, sec. 9) are constitutional. We have reconsidered the issue and, in order to give full consideration to the points raised by defendant, the City was requested to file an answer thereto, and defendant was allowed to file a reply, and despite the fact that the inspection in this case was conducted pursuant to a warrant, we now address the issue.

Defendant argues that section 130—9 is unconstitutional in that it violates the fourth amendment of the United States Constitution, which requires a warrant for inspections of commercial premises which are not within a "pervasively regulated business." (*United States v. Biswell* (1972), 406 U.S. 311, 316, 32 L. Ed. 2d 87, 92, 92 S. Ct. 1593,

1596; see also *Donovan v. Dewey* (1981), 452 U.S. 594, 69 L. Ed. 2d 262, 101 S. Ct. 2534.) Defendant claims that the food industry is not within the exception to the warrant requirement and therefore the ordinance is unconstitutional and his conviction thereunder must be vacated. In its response to the petition for rehearing, the City argues that warrantless searches of food establishments under the Code are constitutional and therefore defendant's conviction should not be vacated. We agree.

■ At the outset we note that at oral argument counsel for defendant alleged that defendant's food establishment was not open to the public. This allegation was not clearly presented by defendant as a basis for contending that a warrant was required to inspect defendant's premises. Nevertheless, the record before this court supports the contrary. At trial, two witnesses, John Sharkey, a Consumer Services officer, and John R. Colletti, a Consumer Services inspector, each testified that they observed members of the public going to and from the premises carrying packages. On the basis of this evidence, the jury could have found that defendant's food establishment was open to the public and thus subject to public inspection.

■ In the cases, *United States v. Biswell* and *Colonnade Catering Corp. v. United States* (1970), 397 U.S. 72, 25 L. Ed. 2d 60, 90 S. Ct. 774, the Supreme Court ruled that businesses dealing with firearms or liquor were subject to warrantless inspections. (See also *Daley v. Berzanskis* (1971), 47 Ill. 2d 395, 269 N.E.2d 716, *cert. denied* (1971), 402 U.S. 999, 29 L. Ed. 2d 166, 91 S. Ct. 2173.) These two cases upheld statutorily authorized warrantless searches and became known as the *Biswell-Colonnade* exception. The rationale behind the *Biswell-Colonnade* exception is implied consent. By accepting the benefits of a trade which is closely regulated, the business person also accepts the burden of such regulation and thereby impliedly consents to warrantless inspections. (*Almeida-Sanchez v. United States* (1973), 413 U.S. 266, 37 L. Ed. 2d 596, 93 S. Ct. 2535.) The Supreme Court also noted that some regulatory statutes "apply only to a single industry, where regulations might already be so pervasive that a *Colonnade-Biswell* exception to the warrant requirement could apply." (*Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 321, 56 L. Ed. 2d 305, 317, 98 S. Ct. 1816, 1825.) The court added that the reasonableness of a warrantless search provision in a regulatory statute "[would] depend upon the specific enforcement needs and privacy guarantees of each statute." *Marshall v. Barlow's, Inc.* (1978), 436 U.S. 307, 321, 56 L. Ed. 2d 305, 317, 98 S. Ct. 1816, 1825.

We must therefore consider whether the food industry is one in

which regulations are so pervasive that subjecting businesses within the industry to warrantless inspections would be constitutional. The parties have not offered, nor has our research revealed any Illinois cases on this issue. Therefore, an examination of cases from other jurisdictions will be helpful. One such representative case is *United States v. New England Grocers Supply Co.* (D. Mass. 1980), 488 F. Supp. 230.) In *New England Grocers*, defendants were convicted of causing certain food stuffs to become adulterated while being held for sale after shipment in interstate commerce. Defendants attacked the constitutionality of a Federal statute which, like the one in the instant case, authorized the warrantless administrative search of their warehouse. The district court upheld the constitutionality of the search noting "the pervasive nature and long history of federal regulation of the food and drug industry, *** and *** the urgent public health interests that are served by the inspections." (488 F. Supp. 230, 238.) With regard to the public health interests, the district court adopted the following statement by the court in *United States v. Business Builders, Inc.* (N.D. Okla. 1973), 354 F. Supp. 141, 143:

"It would be an affront to common sense to say that the public interest is not as deeply involved in the regulation of the food industry as it is in the liquor and firearms industries. One need only to call to mind recent cases of deaths occurring from botulism. Modern commerce has devised such an efficient and rapid means of distribution of food products to the consumer that a batch of contaminated food may cause widespread illness and death before the public can be warned and the contaminated products removed from the market."

Other jurisdictions have similarly determined that warrantless administrative searches of establishments within the food industry are constitutional. See cases cited in *United States v. New England Grocers Supply Co.* (D. Mass. 1980), 488 F. Supp. 230, 238; contra, *United States v. Roux Laboratories, Inc.* (M.D. Fla. 1978), 456 F. Supp. 973.

■ We agree with the reasoning of the courts in the *New England Grocers* and the *Business Builders* cases. Defendant's argument that the regulation of the food industry in Chicago is somehow less important or less necessary than regulation of the firearms or liquor industries is untenable. The food preparation industry in Chicago is heavily regulated by ordinance. Regulations in chapter 130—6.4 of the Code (Chicago, Ill., Municipal Code (1980), ch. 130, sec. 6.4) govern the entire industry from requiring approval for sources of supply, to specifying precautions to be taken to prevent contamination. Further, the Code incorporates by reference the Federal standards for wholesome-

ness and sanitation within the industry. That there has been long-standing regulation of the food industry, and that such regulation is a necessary and proper function of the government's police power to protect the welfare of its citizens cannot be contradicted. As noted by our supreme court in *Daley v. Berzanskis* (1971), 47 Ill. 2d 395, 269 N.E.2d 716, *cert. denied* (1971), 402 U.S. 999, 29 L. Ed. 2d 166, 91 S. Ct. 2173, a case in which the warrantless inspection of liquor businesses was held constitutional:

> "*** any restriction or requirement such as consent to a warrantless search, which is necessary to protect public health, safety and morals, is a reasonable exercise of the police power of the State." (47 Ill. 2d 395, 399.)

Therefore, we hold that based on the long-standing and pervasive regulation of the food industry and mindful of the great public interest served by such regulation, section 130—9 of the Municipal Code, which authorizes the warrantless inspections of food establishments within the city of Chicago is not unconstitutional for any of the reasons assigned by defendant.

This is not to say that the food industry is subject to the unfettered discretion of the city inspectors. The Code is specific in limiting the inspections to reasonable times, to the inspection only of the books and records of the business, and to the inspection only of areas where food preparation or storage is conducted.

Defendant's petition for rehearing also requests a reevaluation of this court's decision on all of the remaining issues raised on appeal. Because defendant's various contentions were considered by us in rendering our opinion, we see no purpose to be served in reconsidering those issues. Therefore, defendant's request is denied.

Accordingly, the decision of the circuit court finding defendant guilty of violating section 130—9 of the Code is affirmed.

Judgment affirmed.

BUCKLEY, P.J., and McGLOON, J., concur.