(No. 33470.—

LYNN R. STEIN *et al.,* Appellees, *vs.* ROBERT GREEN, Appellant.

*Opinion filed May 20, 1955—Rehearing denied September 19, 1955.*

CONGER, ELLIOTT, GOEBEL & ELLIOTT, of Carmi, SYL-VESTER L. CARTER, of Springfield, and LESTER R. LIGHT-FOOT, of Harrisburg, for appellant.

KERN & PEARCE, of Carmi, for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

Appellees, Lynn R. Stein and Ruth L. Stein, brought an action in ejectment against Robert Green, the appellant, in the circuit court of White County, to recover possession of a parcel of real estate, situated in the city of Carmi, which they had purchased by warranty deed from the heirs and devisees of David E. Parker, deceased. By a separate count in equity they prayed for temporary injunctive relief which was granted and which withstood appellant's efforts to dissolve it. Thereafter, the appellant, alleging that he was in possession as a tenant from month to month under a written lease, defended that the ejectment action could not be maintained because he had not been given a thirty-day notice to quit, in writing, as required by our statute relating to landlord and tenant. (Ill. Rev. Stat. 1953, chap. 80, par. 6.) In the alternative, and by way of equitable counterclaim, appellant interposed the defense that he was the owner of the land by virtue of an oral contract to devise with Parker, alleging that appellees knew, or should have known, of his rights at the time they purchased the land. The circuit court found the issues for appellees and this appeal, involving a freehold, has followed.

The factual background necessary to a consideration of the main issues goes back to 1935, when David E. Parker built a car wash and tire shop on a business lot he owned in the city of Carmi, and rented the premises to appellant. The latter, a man with little formal education and for whom Parker apparently had a great deal of affection, continued to rent and operate the business until 1943 when he joined the armed forces for a period

of six months. Upon his return, it was agreed by both men that conditions did not warrant the continued operation of a car service business and thereafter appellant operated a sandwich shop on the premises. Late in the year 1944, Parker sold this lot to an adjoining garage owner and, according to appellant, both men discussed the sale with him in anticipation of the effect it would have on his business. Concurrent with the sale, Parker and appellant executed a written agreement by which appellant purchased, for $200, the building used as a sandwich shop and was authorized to remove it to the parcel of land involved in the present litigation, which was also owned by Parker. Further provisions of the agreement, which was recorded after the complaint in this proceeding was filed, were that appellant could operate his sandwich business on the new premises, that he was to be a tenant from month to month so long as it was mutually agreeable to the parties, that he would pay Parker a monthly rental of $10, that he could remove the building, and any other improvements he might add, at the end of the tenancy, and that upon vacation, appellant would restore the premises as nearly as possible to their present condition. It is appellant's contention that it was on this occasion that Parker orally agreed to make a will devising the new site to him and that, in consideration of such promise, he agreed to remove his business from the garage lot, thus clearing the way for its sale, to pay rent during Parker's lifetime, and to perform certain personal services for Parker without additional compensation.

Appellant entered into possession of the premises under the written agreement and continuously paid rent to Parker until the latter's death early in 1950. The decedent left a will devising all his property to blood relatives and made no mention of appellant. Although appellant, accompanied by an attorney, examined the will soon after it was filed, he made no claim or objection and took no formal action

to establish the alleged contract with decedent until this action was started against him. He now asserts that he was lulled into inaction by the repeated assurances of one of the executors that the latter was in possession of documents which would ultimately vest ownership of the lot in him. In the meantime appellant continued to pay rent either to the executors or to an agent of the devisees of the land.

In October, 1952, with appellant still in possession, appellees, the operators of a floral shop located on adjoining land, purchased the lot from Parker's devisees. Whether they knew, or should have known of appellant's claim to title, is a point of dispute later to be discussed. After receiving their deed, appellees had some conversation with appellant. Their version, denied by appellant, was that he agreed to pay rent, though no sum was discussed or fixed, which was to be collected by appellees after sizeable sums had accumulated rather than in monthly sums. It does appear certain, however, both that appellant did not then claim title to the land and that he did not thereafter pay rent to appellees. The next event of consequence occurred in October, 1953, when appellees orally notified appellant they would need possession of the lot by the first of the coming year in order to erect a greenhouse. It was then that appellant refused to yield possession and informed appellees of his claim to ownership. Soon after, appellees started their action in ejectment and, at the same time, sought and were granted equitable relief by way of temporary injunction. By the terms of the latter, appellant was permitted to continue the operation of his sandwich shop pending the disposition of the ejectment action but was restrained from interfering with the entry on the land of appellees or their agents.

Thereafter, the trial court conducted separate hearings on the ejectment action, on a subsequent suggestion of damages by appellees, on the equitable counterclaim of ap-

pellant, and on a counterclaim at law for damages, also filed by appellant. At the conclusion of the hearings, a final order was entered which ordered a writ of possession to issue to appellees, awarded them $300 damages, made the temporary injunction a permanent one, and dismissed the counterclaims of appellant.

The first question presented by the errors here assigned to the order of the trial court is whether, with relation to the ejectment count, appellant's claim to ownership of the demised premises waived the necessity of his being given a written notice to quit. The trial court held in the affirmative and, we find, did so correctly. Since the early case of *Herrell* v. *Sizeland*, 81 Ill. 457, this court, and others of our jurisdiction, have adhered to the doctrine that where a defendant in ejectment repudiates a tenancy, and claims a title in fee, he dispenses with the necessity of a notice to quit. (See also: *McGinnis* v. *Fernandes*, 126 Ill. 228; *Gentle* v. *Butler*, 278 Ill. App. 371; *Winitt* v. *Winitt*, 339 Ill. App. 75.) The principle which underlies the doctrine, and which must still be said to have application to the present day relation of landlord and tenant, is succinctly stated in the *Herrell case* as follows (p. 460); "It would seem to be apparent that a notice to quit could not be required unless the relation of landlord and tenant existed, and when the defendants, as in this case, expressly repudiated the tenancy and set up that they owned the fee, they, *for whose benefit a notice is required,* may be regarded as occupying a position in which they have dispensed with notice. [Citations.]" (Emphasis supplied.) Appellant argues, however, that the doctrine of the cited cases has application only where the tenancy is one at will, as distinguished from a tenancy for a term. Apart from the fact that the principle which provoked the doctrine does not make it susceptible to such a distinction, the simple answer to such an argument is again found in the *Herrell case,* where it is expressly stated that the rule applies where

the tenancy involved is of either nature. (See also: *Merryman* v. *Bourne*, 76 U.S. 592, 19 L. ed 683; 52 C.J.S. Landlord and Tenant( sec. 769a(4); 32 Am. Jur., Landlord and Tenant, sec. 861.) To further support his argument, appellant has quoted extensively to us from a series of cases emanating from *DeLancy* v. *Ganong*, 9 N.Y. 9, the rationale of which is that a claim of title by a tenant will not act as a forfeiture of his term. Since we are involved here only with the waiver of a notice to quit, an issue neither involved nor discussed in the cases relied upon, we find them to be neither applicable nor persuasive. Inasmuch therefore, as appellees' title was stipulated and the relationship of the parties admitted to be that of landlord and tenant, we must hold, under the circumstances of the case, that proof of a written notice to quit was not a prerequisite for the writ of possession which issued.

Appellant next directs his attack to the action of the trial court in awarding damages to appellees on the suggestion of damages filed pursuant to section 43 of the Ejectment Act. (Ill. Rev. Stat. 1953, chap. 45, par. 44.) Although appellant makes various contentions, we are impressed with but one, namely, that the evidence fails to support the award. The section of the Ejectment Act referred to permits only the recovery of mesne profits in such an action. Damages of such nature have, in turn, been defined in *Ringhouse* v. *Keener*, 63 Ill. 230, as the value of the use and occupation of the land during the period of a defendant's wrongful possession, measured in terms of rents and profits. (See also: *Wismer* v. *Alyea*, 138 So. 763; *Kester* v. *Bostwick*, 15 So. 2d 201.) As is true of all damages, they are not recoverable without some evidence as to amount, and they must be proved with a reasonable degree of certainty. In the present case, the record of the hearing conducted upon appellees' suggestion is barren of any showing of the reasonable rental value of the lot, of any showing that the parties ever agreed

upon a rental value, and of any evidence that any profits from the land accrued to appellant during his wrongful possession. Apart from the conclusion of one of appellees that it was his "understanding" that the rental price had formerly been $10, the proof is directed for the most part to estimates of the increased cost of the construction of appellees' greenhouse and to speculation as to loss of profits in their business which were supposedly occasioned by appellant's possession. Such elements of damage are clearly not within the recovery of mesne profits permitted by the statute. Counsel for appellees have not seen fit either to argue these points or to supplement the abstract by which the evidence has been presented. On the state of the record, therefore, we must hold that the evidence fails to establish the damages with any reasonable degree of certainty and that the judgment making the award to appellees was in error.

Our inquiry is next directed by the contentions of the parties to the interrelated questions of whether appellant may properly interpose a defense by way of an equitable counterclaim in an ejectment action and, if so, whether he may assert his claimed equity against appellees as subsequent purchasers. As to the first query, it is now well established that a defendant may plead equitable defenses to an ejectment action to the same extent he might plead such defenses to other civil actions under the Civil Practice Act. (*Horner* v. *Jamieson,* 394 Ill. 222; *Firke* v. *McClure,* 389 Ill. 543.) As to the second, it has long been held that every subsequent purchaser, with notice, becomes subject to the same equities as the party from whom he purchased and, although not personally liable, may be compelled to perform any contract of his vendors. (*Forthman* v. *Deters,* 206 Ill. 159; *Bryant* v. *Lakeside Galleries, Inc.,* 402 Ill. 466.) The *Forthman case* also holds that a subsequent purchaser with notice of a prior agreement to convey to another person is regarded as a trustee of the

latter. This being so, appellees were the only necessary parties to the counterclaim by which appellant sought performance of the contract to devise allegedly made by a predecessor to appellees' title.

There remains, however, the question of whether appellees were purchasers with notice. The record contains no evidence that appellees had actual knowledge of the alleged contract between Parker and appellant or that they became aware of appellant's alleged equity prior to the time they acquired their title. The facts do show, however, that appellant was in actual and exclusive possession and occupancy of the lot at the time appellees made their purchase and for many years prior thereto. It is equally clear that appellees knew of such possession and occupancy and failed to make any inquiry of appellant concerning his rights or possession. Under the circumstances last described, appellees must be deemed to have purchased with notice, for the decisions of this court have long and clearly held that a purchaser is bound to inquire of persons in possession of real estate by what tenure they hold and by what interest they claim, and is put on notice of all claims, legal and equitable, which the pursuit of such inquiry would disclose. *Ambrosius* v. *Katz,* 2 Ill. 2d 173; *Miller* v. *Bullington,* 381 Ill. 238.

The decisive question under appellant's counterclaim thus becomes, whether the contract, alleged to have been made with Parker, was proved to exist and whether there was proof of its specific terms. In this respect, the guide established by a legion of cases of this nature is that the evidence necessary to support a decree of specific performance must be clear, explicit and convincing, and must establish the parol contract in definite and unequivocal terms. *Galapeaux* v. *Orviller,* 4 Ill. 2d 442; *Weidler* v. *Seibert,* 405 Ill. 477; *Hickey* v. *Hickey,* 374 Ill. 614.

Without detailing it, there is an abundance of undisputed evidence in the record that appellant and Parker

experienced a long and close friendship and that they did many things for each other. Parker, by assisting and advising in business matters, and appellant by performing many odd jobs, personal services and acts of friendship. There is, however, neither clear nor convincing proof that their conduct was referable to any agreement between them or that either looked to considerations other than those that immediately passed between them. Similarly, there is impressive testimony by many people, including the wife and a devisee of Parker, to the effect that Parker had, at various times, expressed his desire for appellant to have the lot, that he was going to will it to him, that he had willed it to him, or, in some instances, that appellant was located permanently and would not have to move again. However, in order to entitle a person to specific performance of a contract to convey, the mere expression of an intention to make a gift of land will not suffice. The contract itself must be proved. *Williams* v. *Corcoran,* 346 Ill. 105; *Tess* v. *Radley,* 412 Ill. 405.

As previously pointed out, it is appellant's position that the contract to devise was entered into, and the mutual obligations of the parties established, at the time the garage lot was sold and appellant moved his sandwich business to the lot presently in dispute. Apart from what may be inferred from Parker's later statements, the only direct evidence that this was so is found in the testimony of appellant. In substance, he testified that the agreement was that he was to move his business, to pay Parker $10 a month and "to do things" for Parker, in return for which Parker "was to furnish me the ground and give it to me at his death." Such evidence falls far short of establishing the terms and conditions with the definiteness that is required. We think too that it is rendered unconvincing when it is contrasted with the terms of the "Rental Contract" the parties entered into upon the same occasion. The document in question did not lease all of the lot to

appellant but only sufficient space upon which to conduct his business. Additionally appellant's month-to-month tenancy was to last only so long as it was mutually agreeable to the parties, and much of the instrument was devoted to the respective rights and burdens of the parties when appellant vacated the premises. While not conclusive, of course, we think the terms of the instrument are inconsistent with the existence of any binding agreement that Parker was to devise the lot to appellant. In this respect it is to be noted too, that much of what appellant claims was done in performance of the contract to devise was, in fact, merely performance of the conditions of the rental contract. When the doubtful nature of the proof of the very existence of a contract is coupled with the uncertainties attending the proof of its terms and conditions, we are of the opinion that the lower court properly denied appellant the relief sought by his counterclaim.

The concluding assignments of error which need be considered are bottomed upon appellant's contentions that the trial court erred in refusing to dissolve the temporary injunction which issued at the beginning of the cause. We have held as recently as *Schien* v. *City of Virden,* 5 Ill. 2d 494, that an order denying a defendant's motion to dissolve a temporary injunction, when not appealed from, becomes a final order that the injunction was properly issued. Since this is true in the present case, the issue relating to the court's refusal to dissolve the temporary injunction, which has now become merged in the permanent injunction, is not properly before us.

For the reasons stated, the order of the circuit court of White County is reversed insofar as it awards appellees damages of $300, but is affirmed in all other respects.

*Affirmed in part and reversed in part.*

Mr. JUSTICE MAXWELL took no part in the consideration or decision of this case.