(No. 55618.—

STOCKER HINGE MANUFACTURING COMPANY, Appellant, v. DARNEL INDUSTRIES, INC., *et al.*, Appellees.

*Opinion filed January 24, 1983.—Rehearing denied April 8, 1983.*

536

SIMON, J., dissenting.

Gordon B. Nash, Jr., of Chicago (Gardner, Carton & Douglas, of counsel), for appellant.

Ronald R. Rassin, of Chicago (Holleb & Coff, Ltd., of counsel), for appellees Darnel Industries, Inc. and Samuel A. Hoffman.

Milton K. Joseph, of Rosemont, for appellee S&S Hinge Co.

CHIEF JUSTICE RYAN delivered the opinion of the court:

Plaintiff, Stocker Hinge Manufacturing Company, appeals from an award of damages in the amount of $44,815.75 entered in the circuit court of Cook County in favor of defendants, Darnel Industries, Inc., Samuel A. Hoffman, and S&S Hinge Company, resulting from the issuance of a temporary restraining order (TRO) under the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, pars. 9,

12). The appellate court affirmed the award of damages (99 Ill. App. 3d 340), and we granted plaintiff's petition for leave to appeal (73 Ill. 2d R. 315).

This case presents one question: whether damages may be awarded when a temporary restraining order is terminated as a result of the denial of a preliminary injunction where the trial court has previously refused to dissolve the TRO and defendants have failed to appeal that decision. Although the narrow issue involved in this case renders it unnecessary to discuss the substantive issues in detail, a basic explanation of the controversy is required.

This is a controversy concerning alleged "trade secrets." Plaintiff, Stocker Hinge Manufacturing Company, filed a verified complaint on September 14, 1977, seeking to enjoin defendants Darnel and Hoffman from revealing plaintiff's trade secrets to S&S. Plaintiff manufactures and sells hinges used in all types of industry. Defendant Darnel Industries manufactures and sells tools and dies, including continuous, butt and special hinge tools and dies. From 1966 to 1974, defendant Samuel A. Hoffman was employed by Stocker Hinge as its chief engineer; afterward, Hoffman became president of Darnel Industries, Inc. Defendant S&S Hinge Company, a competitor of plaintiff, also manufactures and sells hinges for all types of industry.

On September 19, 1977, plaintiff filed a motion for a temporary restraining order and for a preliminary injunction, pursuant to sections 3 and 3—1 of the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, pars. 3, 3—1), initially seeking a TRO to maintain the status quo by restraining defendants from "selling, disclosing, or utilizing any of Stocker's technology and manufacturing processes for continuous, butt or special hinges until a full hearing can be held on Stocker's motion for a preliminary injunction." The motion alleged that defendants

were "about to sell or disclose or ha[d] sold or disclosed the unique technology and manufacturing processes for continuous, butt and special hinges to a competitor of Stocker's, S&S Hinge."

On that same day, the circuit court entered the following order:

"This matter having come to be heard on Friday, September 16, 1977 on Plaintiff's Motion for a Temporary Restraining Order and for a Preliminary Injunction, and the Court having examined the Verified Complaint for Injunction and heard partial testimony in support of the motion, the parties have agreed as follows:

* * *

3. That Hoffman and Darnel will not sell, disclose or deliver any technology and manufacturing process for continuous, butt and special hinges developed by Stocker and Hoffman and utilized by Stocker until further order of this Court.

* * *

In view of the foregoing agreement of the parties,

IT IS THEREFORE ORDERED:

That the status quo shall be maintained consistent with the foregoing agreement of the parties *nunc pro tunc as of September 16, 1977* for a period of ten (10) business days, or to and including September 29, 1977." (Handwritten addition to typed order italicized.)

Afterward, the parties strongly disagreed as to whether the above order was in fact an "agreed order," as plaintiff maintains, or an *"ex parte* order," as defendants argue. The record reveals that there was a substitution of counsel for defendants during this period and that counsel for plaintiff attempted, but was unable, to contact defendants' counsel for approval of the order prior to its entry.

After entry of the temporary restraining order, defendants filed a motion to vacate the order on September 27, 1977, and orally objected to the continuance of the order at the hearing on October 7, 1977. The court denied the defendant's motion and entered an order on September 27,

1977, finding as follows:

> "4. That the order entered into by this Court on Sept. 19, 1977 be and is hereby continued until Oct. 7, 1977 upon Plaintiff filing a bond in the amount of $5,000.00.
> ***
> 6. That the Court finds *no just cause to delay enforcement or appeal* of paragraph 4 of this Order." (Emphasis added.)

The temporary restraining order entered September 19, 1977, was thereafter continued periodically while the court heard evidence on plaintiff's motion for preliminary injunction, and the amount of the bond was increased to $25,000 on October 14, 1977.

At the conclusion of the evidentiary hearings, which extended from September 16, 1977, to November 30, 1977, the court entered an order on December 2, 1977, as follows:

> "IT IS HEREBY ORDERED:
> 1. That the Temporary Restraining Order heretofore entered against Defendants, Darnel Industries, Inc., Samuel A. Hoffman, and S&S Hinge Company, at the behest of Plaintiff, Stocker Hinge Mfg. Co. be and the same is hereby dissolved.
> That the Motion of the Plaintiff for a Preliminary Injunction be and the same is hereby denied."

Plaintiff then took an interlocutory appeal from the order of the circuit court refusing to grant a preliminary injunction. The appellate court affirmed, finding that plaintiff had "failed to establish the distinctive and secret nature of its manufacturing processes by a preponderance of the evidence." 61 Ill. App. 3d 636, 643.

Thereafter, on January 10, 1978, defendants Darnel and Hoffman filed a motion for "damages caused by wrongful entry of temporary restraining order and for recovery on bond," pursuant to sections 9 and 12 of the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, pars. 9, 12). Defendant S&S Hinge also filed a similar motion on that date. Due to numerous continuances and delay, it was not until May 30,

1980, that the court entered an order awarding defendants Darnel and Hoffman damages in the amount of $29,441.75 and defendant S&S Hinge damages in the amount of $15,372.75.

As indicated earlier, plaintiff appealed, and defendants cross-appealed seeking to increase the awards. The appellate court affirmed. (99 Ill. App. 3d 340.) In its affirmation of the damage award, the appellate court determined that the ultimate dissolution of the temporary restraining order on December 2, 1977, at the same time the trial court denied the preliminary injunction, constituted an adjudication that the TRO was wrongfully issued. (99 Ill. App. 3d 340.) We disagree.

In 1967, the term "temporary restraining order" was written into the Injunction Act by an amendment which added section 3—1. Section 9 of the Act was also amended at that time to provide for bond in connection with a TRO. (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177, 181.) Prior to the 1967 amendments to the Injunction Act, the terms "restraining order," "preliminary injunction," "temporary injunction," "interlocutory injunction," and "interlocutory order" were used interchangeably. (55 Ill. 2d 177, 179.) This still occurs to some extent today. The result is that the terminology used is often not precise.

The granting or denial of a TRO is within the sound discretion of the trial court. (*Board of Education v. Springfield Education Association* (1977), 47 Ill. App. 3d 193, 196; *Mars, Inc. v. Curtiss Candy Co.* (1972), 8 Ill. App. 3d 338.) Its purpose is to allow the trial court to preserve the status quo until it can hold a hearing to determine whether it should grant a preliminary injunction. (*Bismark Hotel Co. v. Sutherland* (1980), 92 Ill. App. 3d 167, 175; *Bullard v. Bullard* (1978), 66 Ill. App. 3d 132, 135; *Kirchenberg v. Chicago Transit Authority* (1973), 13 Ill. App. 3d 184, 186.) A TRO should not be refused or dissolved merely because the court may not be absolutely cer-

tain the plaintiff has the right he claims. (*O'Brien v. Matual* (1957), 14 Ill. App. 2d 173, 187.) The plaintiff is not required to make out a case which would entitle him to judgment at trial; rather, he only needs to show that he raises a "fair question" about the existence of his right and that the court should preserve the status quo until the cause can be decided on the merits. *Boner v. Drazek* (1973), 55 Ill. 2d 279, 285-86; *O'Brien v. Matual* (1957), 14 Ill. App. 2d 173, 187-88.

In the instant case, plaintiffs argue that it is necessary for the temporary restraining order to have been wrongfully issued, and that mere dissolution is insufficient, to sustain an award of damages under section 12 (Ill. Rev. Stat. 1977, ch. 69, par. 12). In return, defendants maintain that, for damages to be awarded, it is necessary only that the TRO be dissolved prior to a final determination on the merits. In the alternative, defendants argue that the mere dissolution of a TRO prior to a final determination on the merits itself conclusively establishes that the TRO was wrongfully entered. Other issues were also raised, such as the nature of the damages which may be awarded under section 12, but we find it unnecessary to address those additional issues because we hold that defendants failed to meet the requirements for the award of any damages under section 12.

The relevant paragraphs of the statute with respect to the award of damages are sections 9 and 12 (Ill. Rev. Stat. 1977, ch. 69, pars. 9, 12). Section 9 provides, in part:

> "The court in its discretion, may before issuing a restraining order or a preliminary injunction, require the applicant to give bond in such sum, upon such condition and with such security as may be deemed proper by the court or judge, for the payment of such costs and damages as may be incurred or suffered by any party who is found to have been *wrongfully enjoined* or *restrained.*" (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 69, par. 9.)

And section 12 provides, in part:

"In all cases where an injunction is dissolved by any court of this state, the court, after dissolving such injunction, and before finally disposing of the suit *** shall hear evidence and assess such damages ***." Ill. Rev. Stat. 1977, ch. 69, par. 12.

It is well established that section 12, which provides a summary mode for assessing damages, is to be strictly construed and applied. (*Schien v. City of Virden* (1955), 5 Ill. 2d 494, 504; *Panduit Corp. v. All States Plastic Manufacturing Co.* (1980), 84 Ill. App. 3d 1144, 1149.) It is also well established that damages may be awarded under section 12 only in connection with preliminary injunctions or temporary restraining orders. (*Schien v. City of Virden* (1955), 5 Ill. 2d 494, 503.) Further, such preliminary injunctions or TROs must be dissolved *prior* to a determination of the case on the merits in order to fall within the purview of section 12. *Meyer v. Marshall* (1976), 62 Ill. 2d 435, 439.

Section 9 of the statute, authorizing the court to require bond as a condition of allowing a TRO or preliminary injunction, expressly refers to the award of damages to a party who is found to have been *"wrongfully* enjoined or restrained." (Emphasis added.) (Ill. Rev. Stat. 1977, ch. 69, par. 9.) Section 12, however, does not make a similar distinction. (Ill. Rev. Stat. 1977, ch. 69, par. 12.) Since section 12 does not require that the preliminary injunction or TRO be wrongful, this forms the basis of defendants' position that mere dissolution is all that is required. However, defendants' reliance on the express language of the statute alone effectively ignores the prior decisions of this court.

Despite defendants' arguments to the contrary, it is clear that the opinions of this court subsequent to the 1967 amendments have consistently, and properly, interpreted the section 12 damages award to require a prior adjudication that the TRO or preliminary injunction had, in fact, been wrongfully entered. (*Meyer v. Marshall* (1976), 62 Ill. 2d 435, 439; *Bohn Aluminum & Brass Co. v. Barker*

(1973), 55 Ill. 2d 177, 184.) In *House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 49, this court clearly stated:

> "We adhere to the established view that damages under section 12 are collectible only for *wrongful* issuance of temporary injunctions, when properly sought." (Emphasis added.)

Additionally, it is clear from reading the statute that sections 9 and 12 are intended to be read together, with section 9 granting to the court the authority to require a bond for damages and section 12 prescribing the proper procedure to be followed in applying for a damage award. Ill. Rev. Stat. 1977, ch. 69, pars. 9, 12.

As indicated earlier, after the issuance of the TRO, defendants moved to vacate the order in writing and also orally objected to its continuation. The court denied defendants' motion and continued the TRO over defendants' objection. At the same time, in its order of September 27, 1977, the court found that there was no just reason to delay appeal.

It is well established that the order of the trial court refusing to dissolve a temporary restraining order is immediately appealable. (*Bohn v. Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177.) In *Bohn Aluminum* this court reasoned that "[t]o hold that the refusal to dissolve a temporary restraining order is not appealable under Rule 307 would *** preclude the defendant from applying for an award of damages." 55 Ill. 2d 177, 185.

An order denying defendants' motion to dissolve a TRO, when not appealed from, becomes a final order that the TRO was properly granted. (*Stein v. Green* (1955), 6 Ill. 2d 234, 244; *Debowski v. Shred Pax Corp.* (1977), 45 Ill. App. 3d 891, 897-98.) It becomes the law of the case. *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 504.

In the instant case, defendants did not appeal the trial court's order entered September 27, 1977, refusing to dissolve the temporary restraining order. After the time for appeal had expired, the trial court's decision became the

law of the case. Because an adjudication that the temporary restraining order was wrongfully issued is an essential element in an award of damages under section 12 (*House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 49), no damages may be awarded to defendants on the facts of this case.

Additionally, defendants have failed to recognize the difference between a temporary restraining order which is dissolved by the court because it was improvidently granted and one which simply expires because it has served its function. (*Schuler v. Wolf* (1939), 372 Ill. 386, 389; *Nestor Johnson Manufacturing Co. v. Goldblatt* (1939), 371 Ill. 570, 573-74.) When the temporary restraining order is not dissolved before a hearing on the merits, it becomes merged with the preliminary injunction, if the plaintiff prevails, or it becomes *functus officio*. (*Schien v. City of Virden* (1955), 5 Ill. 2d 494, 504.) Thus, there has been no legal determination that the TRO was wrongfully issued. *House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 50.

Defendants mischaracterize the trial court's order of December 2, 1977, refusing to grant the motion for a preliminary injunction and "dissolving" the TRO. The purpose of a TRO is to maintain the status quo while the court is hearing evidence to determine whether a preliminary injunction should issue. In the instant case, once the trial court had heard the evidence and reached a determination that a preliminary injunction should *not* issue, the TRO, in effect, expired by its own terms because it no longer served any function. Although in its order of December 2, 1977, the trial court "dissolved" the TRO, it would not have been necessary to do so. The temporary restraining order, having served its purpose, simply expired. It was not dissolved but rather became *functus officio*.

Thus, the "dissolution" of the TRO at the conclusion of the hearing on the preliminary injunction did not operate

as a determination that the TRO had been wrongfully entered. The fact that the court ultimately found that plaintiff was not entitled to a preliminary injunction does not necessarily mean that the TRO was wrongfully issued. Here, for instance, the agreed nature of the original order may have precluded the trial court from determining that it has been wrongfully issued. In any event, the court denied the motion to dissolve. That order was not appealed, and there has never been an adjudication that the TRO was wrongfully issued.

Accordingly, the order of the circuit court awarding damages and the judgment of the appellate court affirming that award are reversed.

*Judgments reversed.*

JUSTICE SIMON, dissenting:

The temporary restraining order (TRO) entered by the trial court precluded the defendants, Darnell Industries, Inc., and S&S Hinge Company, from transacting a profitable business arrangement for 2½ months. As a direct result, both companies suffered monetary loss. The majority holds that the defendants may not recover damages under section 12 of the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 12) notwithstanding the trial court's ultimate holding that the plaintiff, Stocker Hinge Manufacturing Company had no legal right to enjoin the transaction. The majority rests its decision upon an archaic procedural technicality. The result is bad policy which, although perhaps required by past decisions of this court, is not required by the language of the Injunction Act.

In reaching its decision that damages are not recoverable the majority relies on *House of Vision, Inc. v. Hiyane* (1969), 42 Ill. 2d 45, 50, *Schien v. City of Virden* (1955), 5 Ill. 2d 494, 504, *Nestor Johnson Manufacturing Co. v. Goldblatt* (1939), 371 Ill. 570, 573-74, and *Schuler v. Wolf* (1939), 372 Ill. 386, 389. These cases establish that once a preliminary injunction has been superseded by the court's

ruling on a permanent injunction it becomes *functus officio* and a contemporaneous or subsequent dissolution of the injunction cannot establish that the injunction was wrongfully entered in order for the trial court to award damages under section 12. The majority applies the same principle in this case where a TRO was dissolved at the same time that the court denied the plaintiff's motion for a preliminary injunction.

These cases arguably establish the principle for which they are cited by the majority. Nevertheless, I would not apply that principle in this case. I believe that these cases are erroneous and that they represent bad policy; this court should overrule them or limit them to their facts.

In particular, the cases relied upon by the majority misapply the *functus officio* doctrine. " '*Functus officio*' is a robust, sonorous Latin phrase without precisional legal connotation" (*Derry Township School District Appeal* (1951), 18 Pa. Super. 415, 417, 79 A.2d 127, 129), and the incantation of that doctrine by the majority obscures the serious issue of policy involved in this case. In this context *functus officio* simply means that once the trial court denied the preliminary injunction the TRO lost its motive power and would have been dissolved, by operation of law, even if the trial court had not specifically dissolved it in the order of December 2, 1977. *Functus officio*, however, does not mean that in denying the preliminary injunction the trial court could not also determine that the TRO was "wrongfully" entered. As an official act the TRO is dead after the court decides the merits of the motion for a preliminary injunction, but the court's treatment of the merits may establish that the plaintiff had no legal right to enjoin the defendants' conduct.

The majority refuses to accept this observation because it interprets "wrongfulness" required under section 12 as referring to a court's mistake in applying the proper legal standard in granting a TRO. Thus, the majority opinion

contains an extended discussion of the proper standard for a trial court to apply in deciding whether to grant a TRO. After the preliminary relief has become *functus officio*, any mistake that the *court* made in applying this standard would not, in the majority's view, be remediable by an award of damages to the defendants.

This standard, however, is not relevant in determining whether a defendant was "wrongfully" enjoined in a manner that entitles him to damages under section 12. Section 9 of the Injunction Act (Ill. Rev. Stat. 1977, ch. 69, par. 9), which contains the "wrongfulness" requirement, states that damages are to be awarded when the defendant has been "wrongfully enjoined." I believe that this language only requires the trial court to determine that the plaintiff had no legal right to an injunction. Thus, "wrongfulness" refers to the legal relationship between the plaintiff and the defendant and not to that between the court and the defendant. When it ultimately is determined that the plaintiff was not entitled to *any* preliminary relief, the trial court's proper application of the TRO standard should not shield the plaintiff from liability for the damages that his act in applying for the TRO has caused the defendant to suffer.

In denying the preliminary injunction in this case the trial court ruled, and the appellate court affirmed, that the plaintiff had not established the possession of a trade secret that was entitled to equitable protection. (See *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1978), 61 Ill. App. 3d 636, 643.) Because the TRO improperly prevented the defendants from using several manufacturing processes during the pendency of the suit, I would require that the plaintiff recompense them for their damages.

The majority's decision will only result in a subtle and undesirable change in the sequence of proceedings involving preliminary relief. Hereafter defendants will have to completely exhaust hearings and appeals on the motion to dissolve the TRO. If unsuccessful on that motion, defendants

will then go forward in defending against plaintiff's motion for a preliminary injunction. In order to preserve their right to damages, defendants in the future will nearly always appeal a trial court's denial of a TRO dissolution motion. The majority's decision thus encourages piecemeal appeals and forces the appellate court to make a final determination concerning the defendant's right to damages at a point in the litigation when the record often is only incompletely developed.

In the instant case, for example, "all parties recognized the obvious fact that the continuation of the TRO depended upon the identical legal and factual issues as governed the possible entry of a preliminary injunction." (*Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.* (1981), 99 Ill. App. 3d 340, 342.) It was quite logical and consistent with conservation of judicial time and resources for the trial court to consolidate hearings on the two motions. The majority erroneously makes the trial court's practical and commendable decision to consolidate the two motions the determinative factor denying the defendant's recovery of damages.

A TRO is an extraordinary legal instrument. In some cases the trial court may grant it *ex parte*, and in such cases the court must rely almost entirely upon the plaintiff's representations concerning his legal rights. A TRO magically freezes the relationship between the plaintiff and the defendant, but it only does so at a risk of considerable injury to the defendant. I believe that a party who chooses to seek this extraordinary instrument of potential destruction should pay for any damages that he inflicts upon his adversary if it is later determined that he has no legal right to an injunction. Because the majority refuses to reexamine this court's erroneous construction of section 12, damages are not always available under such circumstances, and I would encourage the legislature to correct this injustice.