2022 IL App (2d) 210211-U
No. 2-21-0211
Order filed May 25, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| CONNOR FAMILY TRUST, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellee and Cross-Appellant, | ) | |
| | ) | |
| v. | ) | No. 20-CH-475 |
| | ) | |
| CHARLES CHEJFEC, THE VILLAGE OF | ) | |
| GLEN ELLYN, and LADESIC AND SCOTT, | ) | |
| INC., | ) | |
| | ) | |
| Defendants | ) | |
| | ) | Honorable |
| (Charles Chejfec, Defendant-Appellant and | ) | Paul M. Fullerton, |
| Cross-Appellee). | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices Zenoff and Schostok concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The trial court erred in finding that the temporary restraining order was wrongfully entered and awarding Chejfec damages, because the temporary restraining order expired on its own during the hearing on the preliminary injunction rather than being dissolved, as required for damages under section 11-110 of the Code of Civil Procedure (735 ILCS 5/11-110 (West 2020)). Therefore, we reverse.

¶ 2   Plaintiff, the Connor Family Trust, obtained a temporary restraining order (TRO) against defendant, Charles Chejfec, preventing him from constructing a garage on his property. The trial

court subsequently ruled that it was dissolving the TRO, and it partially granted Chejfec's request for damages. Chejfec appeals from the trial court's ruling, arguing that he should have received all of the damages that he sought. Plaintiff cross-appeals, arguing that the trial court erred in finding that the TRO was "wrongly entered" and awarding defendant damages. We agree with plaintiff and reverse.

¶ 3                                    I. BACKGROUND

¶ 4    Plaintiff filed a complaint against Chejfec, the Village of Glen Ellyn (Village), and Ladesic and Scott, Inc. (Ladesic), on July 23, 2020, alleging as follows. Plaintiff owned an easement on Chejfec's driveway for ingress and egress to plaintiff's property. The easement was also held by two other neighbors. Chejfec contracted with Ladesic to build a garage on the easement, and construction was to begin that day. The garage's location would make it impossible or extremely difficult for plaintiff's beneficiary/resident Mike Connor to leave his garage, and it would also result in additional water flow to plaintiff's property. Plaintiff sought preliminary and permanent injunctions enjoining Chejfec and Ladesic from constructing a garage on Chejfec's private drive and/or any construction on the easement, and enjoining the Village from issuing any further permits or documents in support of the garage's construction. Also on July 23, 2020, plaintiff filed a motion for a TRO.

¶ 5    After a hearing the following day, the trial court granted plaintiff's motion for a TRO, finding that plaintiff had established the necessary elements, specifically that plaintiff had a protectable right, that irreparable harm would result absent an injunction, that there was an inadequate remedy at law, and that there was a fair question regarding the likelihood of success on the merits.

¶ 6 On July 31, 2020, Chejfec filed an answer and counterclaim seeking relief that would allow him to build the garage. He filed an amended answer and counterclaim on September 3, 2020.

¶ 7 On October 2, 2020, following a hearing, the trial court dissolved the TRO and denied plaintiff's motion for a preliminary injunction, finding that plaintiff had failed to show the requisite elements. It stated that it was not making any findings or rulings at the time regarding whether plaintiff had an easement, license, or other rights or interests in Chejfec's driveway. The trial court found that the location of Chejfec's proposed garage did not materially interfere with plaintiff's ingress and egress, and that Chejfec could construct his garage in accordance with the plans approved by the Village. The trial court dismissed the Village and Ladesic as parties to the action.

¶ 8 Chejfec filed a second amended counterclaim on October 28, 2020. He sought a declaration that the 1972 document granting use of the driveway provided for a license that could be revoked at any time, rather than an easement. Chejfec requested that specific issues be determined if the trial court found that there was an easement.

¶ 9 On December 17, 2020, Chejfec filed a petition for injunction damages, seeking $21,857.45 for outside attorney fees and costs incurred in dissolving the TRO; $4,007.06 for the increased construction costs caused by the alleged wrongful entry of the TRO; and $20,000 in lost profits from his solo practitioner law firm as a result of him having to work on dissolving the TRO and not on other client matters.

¶ 10 At a hearing on February 8, 2021, the trial court ruled that Chejfec was entitled to recover the increased construction costs of $4,007.06. Regarding the attorney fees, the trial court stated that the hourly fee of $275 was reasonable but that it would award just a small portion of the fees that were related to the TRO itself, totaling $1,870. The trial court denied the request for lost

profits, stating that they were "clearly way too speculative and not really a damage for the issuance of the TRO."

¶ 11    Chejfec asked for a finding that the TRO was "wrongfully" entered. The trial court stated that it entered the TRO based on the pleadings and affidavits, but that after hearing the actual evidence and viewing the site,[1] it determined that the TRO should not have been entered. However, there was no "bad faith" by plaintiff. Plaintiff objected to a finding that the TRO was wrongfully entered, and the trial court asked the parties to submit caselaw on the issue. In a written order the following day, the trial court stated that it would not enter judgment for the damages until reviewing additional authority.

¶ 12    At a hearing on March 22, 2021, the trial court stated that the caselaw showed that wrongful issuance of a TRO did not equal bad faith, but that it would need to find that the TRO was wrongfully entered in order to award damages. The trial court therefore included such a finding in its order, and it awarded Chejfec $5,814.06 in damages. It also included a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) to allow for immediate appeal of its order.

¶ 13    Chejfec timely appealed, and plaintiff timely cross-appealed.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, Chejfec argues that the trial court erred in awarding him just a fraction of the attorney fees he requested, and in failing to award him lost profits. In plaintiff's cross-appeal, it argues that the trial court erred in finding that the TRO was wrongfully entered. We begin with addressing plaintiff's cross-appeal.

¶ 16    To obtain a TRO or preliminary injunction, a party must establish facts showing that (1) it has a protected right, (2) it will suffer irreparable harm absent injunctive relief, (3) its remedy at

---

[1] The trial court had previously granted Chejfec's motion for a site visit.

law is inadequate, and (4) there is a likelihood of success on the merits. *Fox Fire Tavern, LLC v. Pritzker*, 2020 IL App (2d) 200623, ¶ 22. The party seeking such relief is not required to establish a case showing that it is entitled to relief on the merits, but rather need show only a fair question of the existence of the right and that the court should preserve the status quo until it can decide the case on the merits. *In re Estate of Wilson*, 373 Ill. App. 3d 1066, 1076 (2007). The grant or denial of a TRO is within the trial court's sound discretion and will not be disturbed on appeal absent an abuse of discretion. *C.D. Peters Construction Co. v. Tri-City Regional Port District*, 281 Ill. App. 3d 41, 47 (1996). Similarly, whether to dissolve a temporary injunction is within the trial court's discretion. *Stoller v. Village of Northbrook*, 162 Ill. App. 3d 1001, 1008 (1987). A trial court abuses its discretion where its decision is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the trial court's position. *Jackson v. Hehner*, 2021 IL App (1st) 192411, ¶ 39. A trial court will also be found to have abused its discretion when it applies improper legal standards or ignores recognized principles of law. *Save the Prairie Society v. Greene Development Group, Inc.*, 338 Ill. App. 3d 800, 804 (2003).

¶ 17    Section 11-110 of the Code of Civil Procedure (735 ILCS 5/11-110 (West 2020)) addresses damages when the court subsequently dissolves a TRO or preliminary injunction. It provides:

> "In all cases where a temporary restraining order or a preliminary injunction is dissolved by the circuit court or by the reviewing court, the circuit court, after the dissolution of the temporary restraining order or preliminary injunction, and before finally disposing of the action shall, upon the party claiming damages by reason of such temporary restraining order or preliminary injunction, filing a petition under oath setting forth the nature and amount of damages suffered, determine and enter judgment in favor of the party who was injured by such temporary restraining order or preliminary injunction for the

damages which the party suffered as a result thereof, which judgment may be enforced as other judgments for the payment of money. However, a failure so to assess damages as hereinabove set out shall not operate as a bar to an action upon the injunction bond." *Id.* Section 11-110 is strictly construed. *Label Printers v. Pflug*, 246 Ill. App. 3d 435, 438 (1993). In order to obtain damages under section 11-110, the movant must establish that the TRO or preliminary injunction was wrongfully issued. *Peisker v. King*, 140 Ill. App. 3d 640, 641 (1986). A temporary injunction may have been wrongfully issued even if the plaintiff successfully obtains a permanent injunction, and, conversely, a temporary injunction may rightfully have been issued even if the permanent injunction is denied. *Schien v. City of Virden*, 5 Ill. 2d 494, 503 (1955).

¶ 18    Plaintiff argues that it made a proper showing to obtain a TRO, including a prior 2018 correspondence from the Village stating that due to rights in the private drive, "no permit will be issued to allow for the construction of any structure which will encroach on the private drive existing at 732 Crescent Boulevard." Plaintiff argues that before seeking the TRO, it served a letter on Chejfec asking that no construction commence until after the trial court ruled, but Chejfec ignored the request and began construction. Plaintiff asserts that Chejfec could have avoided the whole injunction issue by simply advising plaintiff that he was again seeking to get a permit from the Village to build a garage, such that a court hearing on the subject could have taken place well before a permit was issued and construction began. Plaintiff argues that after the trial court entered the TRO, Chejfec never asked the trial court to make a finding that the TRO was "wrongful" or improperly issued while it was in effect, and he did not seek damages until about 10 weeks after the TRO was dissolved. Plaintiff additionally maintains that Chejfec made admissions recognizing plaintiff's easement both before and after the TRO was issued. Plaintiff argues that the trial court should have denied Chejfec's petition because he failed to show that the TRO was wrongfully

issued and failed to request that it be vacated before it expired at the conclusion of the evidentiary hearing for the preliminary injunction in September 2020.

¶ 19     Plaintiff primarily relies on *Stocker Hinge Manufacturing Co. v. Darnel Industries, Inc.*, 94 Ill. 2d 535 (1983), and *Peisker*, 140 Ill. App. 3d 640. In *Stocker Hinge*, the trial court entered a TRO preventing the defendants from revealing the plaintiff's trade secrets to a competitor. *Stocker Hinge Manufacturing Co.*, 94 Ill. 2d at 538-39. The defendants sought to vacate the TRO, but the trial court denied their request and periodically continued the TRO. *Id.* at 540. Subsequently, following a hearing, it entered an order dissolving the TRO and denying the plaintiff's request for a preliminary injunction. *Id.* The plaintiff appealed the denial of the preliminary injunction, and the appellate court affirmed. *Id.* The defendants then sought damages caused by " 'wrongful entry' " of the TRO, which damages the trial court awarded and the appellate court affirmed. *Id.* at 540-41. The appellate court held that the dissolution of the TRO at the same time the trial court denied the preliminary injunction constituted an adjudication that the TRO was wrongfully issued. *Id.* at 541.

¶ 20     Our supreme court disagreed. It stated that because the defendants did not appeal the trial court's order refusing to dissolve the TRO, the trial court's decision became the law of the case, such that the TRO could not be found to have been wrongfully issued. *Id.* at 544-45. The supreme court further stated that the defendants had "failed to recognize the difference between a temporary restraining order which is dissolved by the court because it was improvidently granted and one which simply expires because it has served its function." *Id.* at 545. It stated, "When the temporary restraining order is not dissolved before a hearing on the merits, it becomes merged with the preliminary injunction, if the plaintiff prevails, or it becomes *functus officio*," such that there "has been no legal determination that the TRO was wrongfully issued." *Id.* The court stated that

although the trial court purported to dissolve the TRO when it denied the motion for a preliminary injunction, that was not actually the case. *Id.* Rather, because the purpose of a TRO is to maintain the status quo while the court is hearing evidence to determine whether to issue a preliminary injunction, once the trial court heard the evidence and determined that a preliminary injunction should not issue, the TRO effectively expired by its own terms because it no longer served any function. *Id.* The supreme court stated that the trial court did not need to "dissolve" the TRO because it had expired after having served its purpose; "[i]t was not dissolved but rather became *functus officio.*" *Id.* It stated that the TRO's dissolution at the end of the hearing on the preliminary injunction did not equate to a determination that the TRO had been wrongfully entered, nor did the fact that the trial court ultimately ruled that the plaintiff was not entitled to a preliminary injunction. *Id.* at 545-46. The supreme court again noted that the trial court had denied the defendants' motion to dissolve the TRO and that the defendants did not appeal that order, so there was never an adjudication that the TRO was wrongfully issued. *Id.* at 546.

¶ 21    In a dissent, Justice Simon stated that the majority interpreted the "wrongfulness" requirement as referring to a court's mistake in applying the proper legal standard in granting a TRO. *Id.* at 547 (Simon, J., dissenting). Justice Simon stated, "When it ultimately is determined that the plaintiff was not entitled to *any* preliminary relief, the trial court's proper application of the TRO standard should not shield the plaintiff from liability for the damages that his act in applying for the TRO has caused the defendant to suffer." (Emphasis in original.) *Id.* at 548 (Simon, J., dissenting). He argued that the majority's decision would result in piecemeal appeals at a time when the record was often incompletely developed, and that the "majority erroneously makes the trial court's practical and commendable decision to consolidate the two motions the

determinative factor denying the defendant's recovery of damages." *Id.* at 549 (Simon, J., dissenting).

¶ 22    In *Peisker*, the plaintiffs sought to enjoin the defendants from constructing a pole-type barn on the defendants' property, based on an alleged restrictive covenant. *Peisker*, 140 Ill. App. 3d at 640-41. The trial court issued a TRO. *Id.* at 641. The hearing on the request for a preliminary injunction was continued on various occasions, with the parties agreeing that the TRO would continue until a hearing on the merits. *Id.* After the hearing, the trial court denied the request for a preliminary injunction and dissolved the TRO. *Id.* The defendants later moved to dismiss the plaintiffs' complaint and sought damages under section 11-110 for attorney and expert witness fees. *Id.* The trial court dismissed the complaint but ruled that the defendants were not entitled to damages under *Stocker Hinge*. This court affirmed. We stated that the trial court did not find that the TRO was wrongfully issued, and that in *Stocker Hinge*, "the supreme court expressly rejected the argument that the denial of a preliminary injunction, by itself, constitutes an adjudication that the TRO was wrongfully granted." *Id.* at 643. We stated:

> "Here, as in *Stocker Hinge,* the trial court refused to issue a preliminary injunction and at the same time purported to dissolve the TRO it had previously granted. In reality, however, the TRO was not dissolved but became *functus officio*, having 'expired by its own terms because it no longer served any function' once the trial court denied the plaintiff's request for a preliminary injunction. *** Consequently, there was no determination that the TRO was wrongfully issued, and therefore defendants are not entitled to recover damages." *Id.* at 644.

¶ 23    Chejfec argues that Illinois courts are clear that wrongfulness is a separate and distinct concept from good faith, raising a fair question, or any other more favorable standard that plaintiff

seeks to conflate with wrongfulness. See *Smith Oil Corp. v. Viking Chemical Co.*, 127 Ill. App. 3d 423, 432-33 (1984) (rejecting the plaintiffs' argument that damages are appropriate only where the TRO was not entered in good faith and affirming the trial court's award of damages, which were based on the plaintiffs' *ex parte* request for a TRO not being "supported by specific facts showing immediate and irreparable harm"); *United Mail Order, Warehouse & Retail Employees Union, Local 20 v. Montgomery Ward & Co.*, 6 Ill. App. 2d 477, 483 (1955) (because the "complaint was inherently defective and did not support the injunctive relief sought upon constitutional and jurisdictional grounds, it would be naive to hold that the temporary injunction was rightfully issued"). Chejfec contends that these cases stand for the proposition that "wrongfulness" simply means that the alleged facts as originally presented in the complaint did not support the entry of the injunction.

¶ 24    Chejfec argues that plaintiff further seeks to blame him for the wrongfulness of the TRO, but neither he nor the Village had any duty or obligation to advise plaintiff of the construction. Chejfec argues that, nonetheless, it is undisputed that the June 12, 2020, Village permit to construct the garage was displayed in the front window of Chejfec's home before construction.

¶ 25    Chejfec maintains that plaintiff misrepresents that he never requested that the trial court dissolve the TRO. Chejfec argues that this is simply not true, as the trial court acknowledged. Chejfec points to the trial court's statement:

          "Now, I've got other issues in this case; however, the pleadings that have been filed—It's a one-count complaint for injunction, and then there was a countercomplaint filed that did not tell me what the cause of action is in the countercomplaint. It was never identified. *But the relief requested was basically what I've just ordered today, that the TRO be dissolved and that Mr. Chejfec may proceed with the construction of his garage.* It also

asked for other relief that this Court deems appropriate, and I don't deem any other relief appropriate right now." (Emphasis added.)

Chejfec further asserts that prior to the TRO's dissolution, he filed a motion for summary judgment on plaintiff's complaint, and the relief he requested also brought the TRO's dissolution within its purview in that it asked for "any and all further relief to which [he] might be entitled or the Court deems appropriate." Chejfec maintains that "once the trial judge had the benefit of evaluating the evidence in the aftermath of granting the TRO, it was readily apparent that Plaintiff had falsely represented in its complaint that the location of" Chejfec's garage would make it impossible or extremely difficult for Connor to leave his garage and exit to the road. Chejfec points out that the trial court's findings were based, in part, on its own observations of the property at issue, which it visited and inspected per his motion, and two days of hearing evidence, which included a video of the Connors actually driving into and out of their garage.

¶ 26    We agree with plaintiff that Chejfec never expressly requested to have the TRO dissolved. In the prayer for relief in his September 3, 2020, amended counterclaim, Chejfec asked that the trial court enter a judgment declaring that the deed conveyed permission to plaintiff to use his driveway but did not convey an easement; that the location of the proposed garage did not materially interfere with the Connors' ingress and egress; that Chejfec could construct the garage pursuant to the Village's permit and its approval of his plans; and "any and all further relief to which Mr. Chejfec may be entitled or the Court deems appropriate." Chejfec's motion for summary judgment also did not mention the TRO, and Chejfec relies on its general prayer for relief. See *supra* ¶ 25. "Except in personal injury actions, every count in every complaint and counterclaim must request specific remedies the party believes it should receive from the court." 735 ILCS 5/2-604.2(a) (West 2020). It is true that "[e]xcept in the case of default, the remedies

requested from the court do not limit the remedies available," but "if a party seeks remedies other than those listed in the complaint or counterclaim, the court may, by proper order, and upon terms that may be just, protect the adverse party against prejudice by reason of surprise." *Id.* § 2-604.2(c). Here, the prayers for relief provided no notice to plaintiff that Chejfec was seeking to dissolve the TRO, and in fact, Chejfec never requested such relief before the trial court went ahead and dissolved the TRO. "The key to the preservation of the question of damages for short term preliminary injunctions lies in the timely filing in the trial court of a motion to dissolve the injunction" (*Emerson Electric Co. v. Sherman*, 150 Ill. App. 3d 832, 836 (1986)), which did not occur here.

¶ 27    Even if, *arguendo*, the issue of dissolving the TRO was properly before the trial court, we agree with plaintiff that *Stocker Hinge* and *Peisker* apply. That is, the trial court granted plaintiff's request for a TRO based on the facts alleged in plaintiff's motion for a TRO. Only after visiting the site and having an evidentiary hearing did the trial court rule on October 2, 2020, that plaintiff was not entitled to a TRO, and it purported to dissolve the TRO at the same time it denied plaintiff's request for a preliminary injunction. However, "[w]hen the temporary restraining order is not dissolved before a hearing on the merits, it becomes merged with the preliminary injunction, if the plaintiff prevails, or it becomes *functus officio*," such that there "has been no legal determination that the TRO was wrongfully issued." *Stocker Hinge Manufacturing Co.*, 94 Ill. 2d at 545. Rather, the TRO effectively expired by its own terms at the time of the ruling on the preliminary injunction because it no longer served any function. *Id.*; *Peisker*, 140 Ill. App. 3d at 644. Accordingly, the trial court did not in fact dissolve the TRO, because the TRO was "*functus officio*" due to the trial court's denial of the preliminary injunction at the same hearing. See *Stocker Hinge Manufacturing Co.*, 94 Ill. 2d at 545.

¶ 28    We recognize that unlike *Stocker Hinge* and *Peisker*, the trial court expressly found that the TRO was wrongfully entered. However, the trial court did not make this finding until March 22, 2021, some five months after the purported dissolution of the TRO and denial of the request for a preliminary injunction. Section 11-110 allows for damages only where a trial court *dissolves* a TRO or preliminary injunction (735 ILCS 5/11-110 (West 2020)), but, as explained, the trial court never actually dissolved the TRO here because it sought to do so at the same hearing where it denied the request for a preliminary injunction, at which point the TRO had effectively expired on its own because it no longer served any purpose. Therefore, Chejfec was not entitled to damages under section 11-110. Though the trial court may have been striving for efficiency, as Justice Simon stated in his dissent in *Stocker Hinge*, under the majority opinion "the trial court's practical and commendable decision to consolidate the two motions" would result in being "the determinative factor denying the defendant's recovery of damages." *Id.* at 549 (Simon, J., dissenting).

¶ 29    As we have determined that the trial court never effectively dissolved the TRO and that Chejfec is therefore not entitled to damages, we do not further analyze the trial court's finding that the TRO was wrongfully entered. We also need not address Chejfec's arguments that the trial court erred in not awarding him the full damages that he sought.

¶ 30                                    III. CONCLUSION

¶ 31    For the reasons stated, we reverse the judgment of the circuit court of Du Page County.

¶ 32    Reversed.